ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 1 2 2005
U.S. COURT OF FEDERAL CLAIMS

UNITED PACIFIC INSURANCE COMPANY, RELIANCE INSURANCE COMPANY, and RELIANCE NATIONAL

v.

THE UNITED STATES OF AMERICA, DEPARTMENT OF THE AIR FORCE

No. 05-107C

**COMPLAINT**

Plaintiffs, United Pacific Insurance Company, Reliance Insurance Company, in liquidation, and Reliance National (hereinafter collectively referred to as "United Pacific"), by and through their attorneys, Duane Morris LLP, by way of Complaint , state as follows:

**INTRODUCTORY ALLEGATIONS**

1. Plaintiff, United Pacific Insurance Company, a prior subsidiary of Reliance Insurance Company and now merged with Reliance Insurance Company, was at all times relevant to the subject matter of the present action duly authorized to engage in the business of issuing surety bonds in all States and Commonwealths relevant to these proceedings.

2. Plaintiff, Reliance Insurance Company, in liquidation, is a corporation organized and existing under the laws of the State of Pennsylvania with its principal offices located at 5 Hanover Square, New York, New York 10004, and at all times relevant to the subject matter of the present action was duly authorized to engage in the business of issuing surety bonds in all States and Commonwealths relevant to these proceedings.

3. Plaintiff Reliance National is a former operations and management division of United Pacific Insurance Company and Reliance Insurance Company.

4. Defendant, The United States of America, Department of the Air Force ("Government") is this country's government having its principal offices located at Washington, D.C.

## JURISDICTION

5. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1491 which grants jurisdiction to the United States Court of Federal Claims to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

6. This Court has jurisdiction over this matter as this matter concerns a surety asserting a claim for equitable subrogation against the Government.

## BACKGROUND

7. By written agreement dated October 5, 1995 (the "Contract"), by and between the Government and Castle Abatement Corporation ("Castle" or "Original Contractor"), Castle agreed to furnish all labor, material and equipment required for Project PTFL 92-1044 and PTFL 92-1046, Renovation of Buildings 2401, 2402 and 2403, McGuire Air Force Base, New Jersey (the "Project"), in accordance with certain contract documents (the "Contract" or the "Contract Documents") issued by the Government. Exhibit "A."

8. The Contract amount was for $3,152,174.00, and United Pacific issued a performance bond (the "Performance Bond") in the penal sum of $3,152,174.00 and a labor and material payment bond in the penal sum of $1,576,087.00 (the "Payment Bond") to the Government as obligee. Exhibit "B."

9. Almost two years later, on July 21, 1997, the Government declared the Original Contractor in default and terminated the Contract for default, and then made a demand upon United Pacific under the Performance Bond.

10. Thereafter, on August 5, 1997, the Government and United Pacific entered into a written takeover agreement (the "Takeover Agreement"), whereby, *inter alia*, United Pacific agreed to complete the work remaining to be completed under the Contract. Exhibit "C."

11. United Pacific then completed the Contract, through its completion contractor, Lattimer & Associates ("Lattimer").

12. On April 12, 2000, pursuant to the Contract Disputes Act ("CDA") and the Disputes Clause of the Contract, FAR Section 52.233-1, United Pacific served upon the Government a "Request for Equitable Adjustment," including, *inter alia*, a claim that the Contract, as awarded, was illegal, and requesting that the Contract be terminated for the convenience of the Government, and that United Pacific be awarded its actual cost of completion, net of sums received from the Government, in the sum of $3,194,490.59 ("REA").

13. The Government denied the illegal contract claim in the REA, and United Pacific filed an appeal with the Armed Services Board of Contract Appeals ("ASBCA" or "Board") on or about September 21, 2000.

14. On or about June 4, 2003, the Board denied United Pacific's illegal contract claim on the grounds that it did not have jurisdiction over the claim.

15. Following an appeal to the United States Court of Appeals for the Federal Circuit, the Federal Circuit also ruled that the Board did not have jurisdiction over United Pacific's illegal contract claim.

16. To date, United Pacific has not received a decision on the merits of its illegal contract claim against the Government.

17. As United Pacific did not discover that the subject Contract was illegal, and had no reason to believe otherwise, until approximately January 2000, this action is timely under 28 U.S.C. §1491. See Affidavits of Frederick M. Zauderer, Irving A. Cornine and Scott Lattimer attached at Exhibit "D."

## COUNT ONE – ILLEGAL CONTRACT

### Illegal Funding of the Project under Requisition and Accounting Classification 3400, Operations and Maintenance

18. United Pacific repeats and realleges each and every allegation contained in paragraphs 1 through 17 as if fully set forth at length herein.

19. The Government's Solicitation and Offer of Award for the Contract defined the work to be performed as a project for "Construction, Alteration or Repair," specifically a contract to "Renovate Bldgs 2401, 2402 & 2403," and listed a total contract sum of $3,152,174.00. Exhibit "A."

20. The Solicitation, *inter alia*, specifically lists "construction costs" for the renovation of the complex as follows:

| CLIN | Description | Amount |
|---|---|---|
| 0001AA | Construction costs for renovation of Building 2401. This item includes all work for new sidewalks, manard roof extension, new canopies, new planters, new exterior lighting and new drainage. CLIN 0001AA is subject to a cost limitation of $300,000. | $297,400.00 |

| CLIN | Description | Amount |
|---|---|---|
| 0006AA | Construction costs for renovation of Building 2403. This item includes all work for the new court yard, the new lounge additions, the new stairwell additions, the new ramp, removal of load bearing walls in basement, new sidewalks, planters and exterior lighting, and new drainage. CLIN 0006AA is subject to a cost limitation of $300,000. | $297,423.00 |
| 0011AA | Construction costs for renovation of Building 2402. This item includes all work for the new court yard, the new lounge additions, the new stairwell additions, the new ramp, removal of load bearing walls in basement, new sidewalks, planters and exterior lighting, and new drainage. CLIN 0011AA is subject to a cost limitation of $300,000. | $297,423.00 |

Exhibit "A."

21. While these construction items for the office complex total $892,246.00, the entire $3,152,174.00 Contract constituted a construction project as the solicitation is replete with myriad items indicative of a construction project rather than mere repair and maintenance work.

22. Nevertheless, other than for the $892,246.00 in construction costs noted above for Government funding codes, CLIN Nos. 0001AA, 0006AA, and 0011AA, the Government funded the remaining work under Requisition and Accounting Classification 3400, Operations and Maintenance ("O&M").

23. Obvious construction work was improperly classified as classification 3400 or O & M, thus rendering the Contract illegal. The work should have been classified under Classification 3300, Military Construction.

24. Air Force Instruction 32-1021 defines a "military construction project" as:

> any construction, development, conversion or extension of any kind carried out with respect to a military installation. It includes all construction work necessary to produce a complete and usable facility, or a complete or usable improvement to an existing facility.

25. By spending over $3.0 million in converting long-abandoned barracks into a modern office complex, this Project was clearly military construction per the Air Force's own guidelines; therefore, the Contract was illegal as it was illegally classified under Requisition and Accounting Classification 3400, Operations and Maintenance.

26. Furthermore, the Contract was illegal because, at the time of the Contract, a military construction project costing over $300,000 required Congressional approval, which the Government failed to obtain. 10 U.S.C. § 2805(c)(1).

27. Had United Pacific known that the Original Contract was illegal, a fact that the Government knew but failed to disclose to United Pacific, United Pacific would not have provided the Bonds, would not have entered to the Takeover Agreement which incorporated the illegal contract, and therefore, would never have been forced to expend sums to complete the Project.

WHEREFORE, United Pacific Insurance Company prays for judgment in its favor in the amount of $2,864,244.94 plus interest, and such other and further relief as in law and in justice it may be entitled to receive.

## COUNT II - - ILLEGAL CONTRACT

### Illegal Classification of the Project as Maintenance and Repair Work

28. United Pacific repeats and realleges each and every allegation contained in paragraphs 1 through 27 as if fully set forth at length herein.

29. While there is no limit to O & M funding for maintenance and repair, the Project does not fit within the definition of maintenance and repair.

30. AFI 32-1032, para. 3.3.1 defines maintenance as "work required to preserve real property facilities and prevent premature failure or wearing out of system components."

31. Air Force and statutory regulations state that "repair is that work required for any facility (i.e., building, utility system, or other real property infrastructure) or facility component to restore its safe, effective, and economical support of assigned missions and organizations." AFI 32-1032, para. 3.3.2; 10 U.S.C. § 2811(e).

32. However, "repair" does not include additions and functional conversions. 10 U.S.C. § 2811(c).

33. Conversion of a building from one primary function to another as in this Project clearly falls under the category of O & M funded construction and not repair.

34. The barracks were totally unusable structures that were, pursuant to the illegal contract, gutted and completely converted to create a usable modern office complex. Therefore, this Project was required to be approved and funded by Congress under Unspecified Military Construction Projects as per 10 U.S.C. § 2805(b)(1).

35. Had United Pacific known that the Original Contract was illegal, a fact that the Government knew but failed to disclose to United Pacific, United Pacific would not have provided the Bonds, would not have entered into the Takeover Agreement which incorporated the illegal contract, and therefore, would never have been forced to expend sums to complete the Project.

WHEREFORE, United Pacific Insurance Company prays for judgment in its favor in the amount of $2,864,244.94 plus interest, and such other and further relief as in law and in justice it may be entitled to receive.

**COUNT III – ILLEGAL CONTRACT**

**Illegal Project Splitting in Violation of 10 U.S.C. § 2805(c)(1)**

36. United Pacific repeats and realleges each and every allegation contained in paragraphs 1 through 35 as if fully set forth at length herein.

37. Under the version of 10 U.S.C. § 2805(c)(1) in effect at the time of the Contract, a military construction project costing over $300,000 required Congressional approval.

38. Although the total "construction" costs as represented by Government funding codes, CLIN Nos. 0001AA, 0006AA, and 0011AA, total $892,246.00, the Government never obtained the required Congressional approval for construction costs exceeding $300,000.

39. The Government contends that even if the project is considered military construction, that the military construction allowance from Operations and Maintenance Funds (O&M Funds) should be allocated per building as each building is a separate project.

40. While there can be no dispute that the minor construction in the Contract exceeded $300,000 in the aggregate ($892,246.00), the Government claims that the construction portion of the Project did not exceed $300,000 per building, thereby avoiding any threshold violations.

41. However, the Government's classification of the Project as three projects is a sham designed to avoid the threshold requirement.

42. Project splitting in order to avoid an approval threshold is specifically prohibited by the Air Force's own guideline, Air Force Instruction 32-1021, para. 4.2.:

> Splitting a project into increments solely to reduce the cost thereof below an approval threshold or the minor construction ceiling is prohibited.

43. Multiple interrelated buildings, structures, or other improvements built to create a single complete and usable facility constitutes one construction project. The Honorable Michael B. Donley, B-234326.15, 1991 U.S. Comp Gen. LEXIS 1564, at 7.

44. Therefore, the illegal Contract covered one construction project, not three separate construction projects.

45. As the Government, even by its own calculation of minor construction, exceeded the threshold requirement and as the Federal Acquisition Regulations (48 C.F.R. § 36.205(a)(1)) expressly bar contract awards in excess of statutory cost limitations, the Contract is illegal.

46. Had United Pacific known that the Original Contract was illegal, a fact that the Government knew but failed to disclose to United Pacific, United Pacific would not have provided the Bonds, would not have entered into the Takeover Agreement which incorporated the illegal contract, and therefore, would never have been forced to expend sums to complete the Project.

WHEREFORE, United Pacific Insurance Company prays for judgment in its favor in the amount of $2,864,244.94 plus interest, and such other and further relief as in law and in justice it may be entitled to receive.

## COUNT IV - - EQUITABLE SUBROGATION / QUANTUM MERUIT RECOVERY

47. United Pacific repeats and realleges each and every allegation contained in paragraphs 1 through 46 as if fully set forth at length herein.

48. United Pacific was unable to verify and definitively determine that the Contract was illegal until approximately January 2000, and had no reason to believe otherwise until that

time. See Exhibit "D" (Affidavits of Frederick M. Zauderer, Irving A. Cornine and Scott Lattimer).

49. A contract which is illegal is deemed to be voidable, entitling the contractor to have the contract terminated for convenience, particularly where the contractor did not contribute to the illegality and was unaware that the contract was illegal when it was awarded.

50. Such a termination entitles the contractor to recover the cost of performance plus a reasonable profit on those costs whether or not benefit accrued to the Government. In this case, the Project was fully funded and completed by United Pacific, constituting substantial benefit to the Government.

51. Neither the Original Contractor nor United Pacific contributed to the illegality of the Original Contract, nor was either the Original Contractor or United Pacific aware of the illegality at the time of award.

52. Following the default of the Original Contractor, United Pacific completed the Project and paid all of the unpaid subcontractors and suppliers on the Project.

53. Consequently, United Pacific is equitably subrogated to all of the rights of the Original Contractor against the Government.

54. Accordingly, United Pacific is entitled to have the Contract terminated for convenience under FAR Section 52.249-2 (APR 1984), which is specified in the Original Contract, and to recover its costs plus a reasonable profit on a quantum meruit basis.

55. United Pacific incurred a total of $3,525,757.25 in costs in completing the Original Contract work under the Takeover Agreement. To date, the Government has made payments of $661,512.31. Therefore, United Pacific is entitled to recover the sum of $2,864,244.94 from the Government.

WHEREFORE, United Pacific Insurance Company prays for judgment in its favor in the amount of $2,864,244.94 plus interest, and such other and further relief as in law and in justice it may be entitled to receive.

## COUNT V – BREACH OF CONTRACT

56. United Pacific repeats and realleges each and every allegation contained in paragraphs 1 through 55 as if fully set forth at length herein.

57. On August 5, 1997, the Government and United Pacific entered into a written takeover agreement (the "Takeover Agreement"), whereby, *inter alia*, United Pacific agreed to complete the work remaining to be completed under the Contract. Exhibit "C."

58. The Takeover Agreement incorporated the Original Contract.

59. United Pacific completed its work under the Takeover Agreement under the terms of an actual contract that happened to be illegal as United Pacific discovered after the Project's completion.

60. Accordingly, United Pacific is entitled to have the Takeover Agreement terminated for convenience under FAR Section 52.249-2 (APR 1984), which is specified in the Original Contract, and to recover its costs plus a reasonable profit on a quantum meruit basis.

61. United Pacific incurred a total of $3,525,757.25 in costs in completing the Original Contract work under the Takeover Agreement. To date, the Government has made payments of $661,512.31. Therefore, United Pacific is entitled to recover the sum of $2,864,244.94 from the Government.

WHEREFORE, United Pacific Insurance Company prays for judgment in its favor in the amount of $2,864,244.94 plus interest, and such other and further relief as in law and in justice it may be entitled to receive.

## COUNT VI - -MISREPRESENTATION AS INDUCEMENT TO CONTRACT

62. United Pacific repeats and realleges each and every allegation contained in paragraphs 1 through 61 as if fully set forth at length herein.

63. At no time prior to the execution of the Original Contract or the Takeover Agreement or at any other time did the Government ever inform United Pacific that the Contract was improperly funded and illegal.

64. United Pacific provided the Bonds on the Original Contract and entered into the Takeover Agreement on its belief and the Government's representation that the Original Contract was legal and properly classified and funded.

65. Had United Pacific known that the Original Contract was illegal, a fact that the Government knew or should have known but failed to disclose to United Pacific, United Pacific would not have provided the Bonds, would not have entered to the Takeover Agreement which incorporated the illegal contract, and therefore, would not have been forced to expend $3.5 million in costs in completing the Project.

66. Accordingly, United Pacific is entitled to have the Takeover Agreement terminated for convenience under FAR Section 52.249-2 (APR 1984), which is specified in the Original Contract, and to recover its costs plus a reasonable profit on a quantum meruit basis.

67. United Pacific incurred a total of $3,525,757.25 in costs in completing the Original Contract work under the Takeover Agreement. To date, the Government has made payments of $661,512.31. Therefore, United Pacific is entitled to recover the sum of $2,864,244.94 from the Government.

WHEREFORE, United Pacific Insurance Company prays for judgment in its favor in the amount of $2,864,244.94 plus interest, and such other and further relief as in law and in justice it may be entitled to receive.

Respectfully Submitted,

Gary A. Wilson
Salil P. Patel
DUANE MORRIS LLP
4200 One Liberty Place
Philadelphia, PA 19103-7396
215-979-1000
215-979-1020 (fax)

Attorneys for Reliance Insurance Company and United Pacific Insurance Company

Date: January 11, 2005

| | | | | |
|---|---|---|---|---|
| SOLICITATION, OFFER AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NO. F28609-95-B-A044 | 2. TYPE OF SOLICITATION [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP) | 3. DATE ISSUED 28 JUL 95 | PAGE 1 OF PAGES 46 |

IMPORTANT - The 'offer' section on the reverse must be fully completed by the offeror.

| | | |
|---|---|---|
| 4. CONTRACT NO. F28609-95-C-0036 | 5. REQUISITION/PURCHASE REQUEST NO. SEE BELOW | 6. PROJECT NO. PTFL 92-1044/1046/1113 RENOVATE BLDGS 2401,2402 & 2403 |

| | |
|---|---|
| 7. ISSUED BY CODE<br>CONTRACTING SQUADRON<br>3563 LANCASTER AVE<br>MCGUIRE AFB, NJ 086411712 | 8. ADDRESS OFFER TO<br>CONTRACTING SQUADRON<br>3563 LANCASTER AVE<br>MCGUIRE AFB, NJ 086411712<br>DO: C2 SIC CODE: 1542 SIZE STD: $17,000,000 |

| | | |
|---|---|---|
| 9. FOR INFORMATION CALL: | A. NAME BUYER: LEFKOWITZ, SAUL /CONST | B. TELEPHONE NO. (Include area code)(NO COLLECT CALLS) 6097245935 |

SOLICITATION

NOTE: In sealed bid solicitations 'offer' and 'offeror' mean 'bid' and 'bidder'.

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS (Title, identifying no., date)

SEE SCHEDULE

ENTER PRICES IN SECTION B
USE TYPEWRITER OR BLACK INK

This Acquisition is a TOTAL SMALL DISADVANTAGED BUSINESS SET-ASIDE

REQUISITIONS FOR THIS PROJECT ARE AS FOLLOWS:

FQ4484-5160-0100, FQ4484-5160-0200, FQ4484-5160-0300, FQ4484-5160-0400, FQ4484-5160-0500, FQ4484-5160-0600

REQUISITION AND ACCOUNTING CLASSIFICATION:

| | | |
|---|---|---|
| FO4484-5160-0100 | 5753400 305 65MB 244449 02 529AC 528200 (A82275) | $298,173.00 |
| 484-5160-0200 | 5753400 305 65MB 02 244447 02 522AE 528200 (A82276) | $777,300.00 |
| 484-5160-0300 | 5753400 305 65MB 244449 02 529AD 528200 (A82277) | $298,173.00 |
| 484-5160-0400 | 5753400 305 65MB 244447 02 522AF 528200 (A82278) | $899,100.00 |
| FQ4484-5160-0500 | 5753400 305 65MB 244449 02 529AE 528200 (A82279) | $298,900.00 |
| FQ4484-5160-0600 | 5753400 305 65MB 244447 02 522AG 528200 (A82280) | $580,528.00 |
| | | $3,152,174.00 |

11. The Contractor shall begin performance within _*_ calendar days & complete it within _*_ calendar days after receiving [ ] award, [X] notice to proceed.
This performance period is [X] mandatory [ ] negotiable. (See * I100 FAR 52.212-3.)

| | |
|---|---|
| 12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? (If 'YES,' indicate within how many days after award in Item 12B.) [X] YES [ ] NO | 12B. CALENDAR DAYS 010 |

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 01 copies to perform the work required are due at the place specified in item 8 by 2:00 PM (HOUR) LOCAL TIME 29 AUG 95 (date). If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number and the date and time offers are due.

B. An offer guarantee [X] IS, [ ] IS NOT REQUIRED.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation full text or by reference.

D. Offers providing less than 090 calendar days for Government acceptance after the date offers are due will be considered nonresponsive and will be rejected.

OFFER (be fully completed by offeror)

14. NAME AND ADDRESS OF OFFEROR (Include Zip Code)
CASTLE ABATEMENT CORP.
60 HECKEL STREET
BELLEVILLE, N.J. 07109.

FACILITY CODE

15. TELEPHONE NO. (Include area code)
201-759-8303.

16. REMITTANCE ADDRESS (Include only if different than item 14)
SAME AS ITEM 14.

17. offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within _____ calendar days after the date offers are due. (Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means offeror accepts the minimum in Item 13D.

AMOUNTS > > SEE SECTION B

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS
(The offeror acknowledges receipt of amendments to the solicitation - give number and date of each)

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT NO. | 0001 | 0002 | | | | | | | | |
| DATE | 8/14/95 | 8/18/95 | | | | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print)
JAMES JOSEPH JAMES - PRESIDENT

20B. SIGNATURE
[signature]

20C. OFFER DATE
08/29/95

21. ITEMS ACCEPTED:
0001AA through 0016

22. AMOUNT
$3,152,174.00

23. ACCOUNTING AND APPROPRIATION DATA
see Block 10 of this document

24. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 COPIES UNLESS OTHERWISE SPECIFIED) >>

ITEM 26

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO
N/A
[ ] 10 USC 2304(c)( ) [ ] 41 USC 253(c)( )

26. ADMINISTERED BY CODE
CONTRACTING SQUADRON (LGCK)
3563 LANCASTER AVENUE
MCGUIRE AFB NJ 08641-1712

27. PAYMENT WILL BE MADE BY
ACCOUNTING AND FINANCE OFFICE/FMFC
2906 TUSKEGEE AIRMAN AVENUE
MCGUIRE AFB NJ 08641-5013

CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

[ ] 28. NEGOTIATED AGREEMENT (Contractor is required to sign this document and return _____ copies to issuing office). Contractor agrees to furnish & deliver all work, requisitions identified on this form & any continuation sheets for the consideration stated in this contract. The rights & obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitations, & (c) the clauses, representations, certifications, & specifications or incorporated by reference in or attached to this contract.

[X] 29. AWARD (Contractor is not required to sign this document). Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consits of (a) the Government solicitation and your offer and (b) this contract award. No futher contractual document is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN (Type or print)

30B. SIGNATURE

30C. DATE

31A. NAME OF CONTRACTING OFFICER (Type or print)
KATHLEEN DEMITO

31B. UNITED STATES OF AMERICA
Kathleen R. Demito

31C. AWARD DATE
95SEP21

B-1. CLAUSES AND PROVISIONS F28609- 95-C-0036

(a) Clauses and provisions from the Federal Acquisition Regulation (FAR) and supplements thereto are incorporated in this document by reference and in full ..t. Those incorporated by reference have the same force and effect as if they ..e given in full text.

(b) Clauses and provisions in this document will be numbered in sequence, but will not necessarily appear in consecutive order.

**(c) Sections K, L and M will be physically removed from any resultant award, but will be deemed to be incorporated, by reference, in that award.**

PART I - THE SCHEDULE F28609- 95-C-0036
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS

| CLIN | DESCRIPTION | QTY | UNIT | AMOUNT |
|---|---|---|---|---|
| 0001 | BASIC REQUIREMENT: All work to renovate Bldg 2401. Exterior work will be included to the midpoint line with Bldg 2402 and Bldg 2403 as shown on drawing S-2. The Basic Requirement is inclusive of CLINs 0001-0005AH. | | | |
| 0001AA | Construction costs for renovation of Bldg 2401. This item includes all work for new sidewalks, manard roof extension, new canopies, new planters, new exterior lighting, and new drainage. CLIN 0001AA is subject to a cost limitation of $300,000. | 1 | JB | $ 297,400.00 |
| 0001AB | Repair costs for renovation of Bldg 2401. This item includes all other work for renovating Bldg 2401 not specifically identified in CLINs 0001AA 0002, 0003, 0004, 0005 and 0016. | 1 | JB | $ 563,861.00 |

| CLIN* | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0002 | Termite damage and dry rot repair. | | | | |
| 0002AA | All work to repair rough framing to include but not be limited to; studs, columns, joists, rafters, sill plates, window liners, door liners, double 2X headers, double 2x4 sills, shims and blocking. | 1400 | BF | 4.00 | 5600.00 |
| 002AB | All work to repair plywood flooring. | 50 | SF | 3.25 | 162.50 |
| 0003 | Remove asbestos. | | | | |
| 0003AA | Set-up decontamination area prior to asbestos removal procedures and decontamination area clean-up including testing and dismantling of objects and systems. | 1 | EA | 1500.00 | 1500.00 |
| 0003AB | Remove, package, transport and dispose of pipe insulation including testing. No adjustment allowed for fitting. | 50 | LF | 12.00 | 600.00 |
| 0003AC | Remove, package, transport and dispose of boiler, air handler, and sprayed on insulation, including testing. | 5 | SF | 15.00 | 75.00 |
| 0003AD | Tear down decontamination including testing, and re-establishment of objects and systems. | 1 | EA | 500.00 | 500.00 |
| 0003AE | Glove bag removals: Remove, package, transport and dispose of asbestos insulation. | 4 | LF | 25.00 | 100.00 |

F28609-95-C-0036

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

| CLIN | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0003AF | Transite removals: Remove, package, transport and dispose of transite asbestos piping. | 4 | LF | 10.00 | 40.00 |
| 0003AG | Transite removal: Remove, package, transport and dispose of transite asbestos wallboard, shingles and siding. | 4 | SF | 10.00 | 40.00 |
| 0003AH | Repackage, transport and dispose of improperly packaged material. | 1 | CY | 120.00 | 120.00 |
| 0003AJ | Transport and dispose of already packaged material. | 1 | CY | 110.00 | 110.00 |
| 0003AK | Vinyl asbestos tile removals: Remove, package, transport of vinyl asbestos floor tile. | 1700 | SF | 4.00 | 6800.00 |
| 0003AL | Repair damaged insulation/exterior jacketing of piping. | 10 | SF | 15.00 | 150.00 |
| 0004 | Insulate pipes (for existing pipes from which asbestos is removed. Insulation of new piping is part of CLIN 0001AA) | | | | |
| 0004AA | Insulate 1 1/4" - 1 1/2" pipes | 10 | SF | 4.00 | 40.00 |
| 0004AB | Insulate 2" pipes | 10 | SF | 4.00 | 40.00 |
| 0004AC | Insulate 2 1/2" pipe | 10 | SF | 4.00 | 40.00 |
| 0004AD | Insulate 3" pipe | 10 | SF | 4.50 | 45.00 |
| 0004AE | Insulate 3 1/2" pipe | 10 | SF | 4.50 | 45.00 |
| 0004AF | Insulate 4" pipe | 10 | SF | 4.50 | 45.00 |
| 0004AG | Insulate secondary heating piping (1/2 " thru 1") | 80 | SF | 5.00 | 400.00 |
| 0005 | **Insulate fittings, flanges, elbows & tees (1/2" thru 12")** | | | | |
| 0005AA | 1/2" thru 1" fittings | 2 | EA | 15.00 | 30.00 |
| 0005AB | 1 1/4" fittings | 2 | EA | 15.00 | 30.00 |
| 0005AC | 1 1/2" fittings | 2 | EA | 15.00 | 30.00 |
| 0005AD | 2" fittings | 2 | EA | 15.00 | 30.00 |

F28609-95-C-0036

PART - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

| CLIN | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0005AE | 2 1/2 " fittings | 2 | EA | 20.00 | 40.00 |
| 0005AF | 3" fittings | 2 | EA | 25.00 | 50.00 |
| 0005AG | 3 1/2" fittings | 2 | EA | 25.00 | 50.00 |
| 0005AH | 4" fittings | 2 | EA | 30.00 | 60.00 |

NOT-TO-EXCEED TOTAL FOR BASIC REQUIREMENT (CLINS 0001 - 0005AH) $ 878,033.50

PART - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

F28609- 95-C-0036

| CLIN | DESCRIPTION | QTY | UNIT | AMOUNT |
|---|---|---|---|---|
| 0006 | OPTIONAL REQUIREMENT NO. 1: All work to renovate Bldg 2403. Exterior work will be included to the midpoint line with Bldgs 2401 and 2402 as shown on drawing S-2. Optional Requirement No. 1 is inclusive of CLINs 0006-0010AH. | | | |
| 0006AA | Construction costs for renovation of Bldg 2403. This item includes all costs for the new court yard, the new lounge additions, the new stairwell additions, the new ramp, removal of load bearing walls in basement, new sidewalks, planters and exterior lighting, and new drainage. CLIN 0006AA is subject to a cost limitation of $300,000. | 1 | JB | $ 297,423.00 |
| 0006AB | Repair costs for renovation of Bldg 2403. This item includes all other work to renovate Bldg 2403 not specifically identified in CLINs 0006AA 0007, 0008, 0009, 0010 and 0016. | 1 | JB | $ 755,728.00 |

| CLIN* | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0007 | Termite damage and dry rot repair. | | | | |
| 0007AA | All work to repair rough framing to include but not be limited to; studs, columns, joists, rafters, sill plates, window liners, door liners, double 2X headers, double 2x4 sills, shims and blocking. | 1800 | BF | 4.00 | 7200.00 |
| 0007AB | All work to repair plywood flooring. | 50 | SF | 3.25 | 162.50 |
| 0008 | Remove asbestos. | | | | |
| 0008AA | Set-up decontamination area prior to asbestos removal procedures and decontamination area clean-up including testing and dismantling of objects and systems. | 1 | EA | 1500.00 | 1500.00 |
| 0008AB | Remove, package, transport and dispose of pipe insulation including testing. No adjustment allowed for fitting. | 75 | LF | 12.00 | 900.00 |
| 0008AC | Remove, package, transport and dispose of boiler, air handler, and sprayed on insulation, including testing. | 5 | SF | 15.00 | 75.00 |
| 0008AD | Tear down decontamination including testing, and re-establishment of objects and systems. | 1 | EA | 500.00 | 500.00 |
| 0008AE | Glove bag removals: Remove, package, transport and dispose of asbestos insulation. | 4 | LF | 25.00 | 100.00 |

F28609- 95-C-0036

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

| CLIN | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0008AF | Transite removals: Remove, package, transport and dispose of transite asbestos piping. | 4 | LF | 10.00 | 40.00 |
| 0008AG | Transite removal: Remove, package, transport and dispose of transite asbestos wallboard, shingles and siding. | 4 | SF | 10.00 | 40.00 |
| 0008AH | Repackage, transport and dispose of improperly packaged material. | 1 | CY | 120.00 | 120.00 |
| 0008AJ | Transport and dispose of already packaged material. | 1 | CY | 110.00 | 110.00 |
| 0008AK | Vinyl asbestos tile removals: Remove, package, transport of vinyl asbestos floor tile. | 2400 | SF | 4.00 | 9600.00 |
| 0008AL | Repair damaged insulation/exterior jacketing of piping. | 10 | SF | 15.00 | 150.00 |
| 0009 | Insulate pipes (for existing pipes from which asbestos is removed. Insulation of new piping is part of CLIN 0006AA) | | | | |
| 0009AA | Insulate 1 1/4" - 1 1/2" pipes | 10 | SF | 4.00 | 40.00 |
| 0009AB | Insulate 2" pipes | 10 | SF | 4.00 | 40.00 |
| 0009AC | Insulate 2 1/2" pipe | 10 | SF | 4.00 | 40.00 |
| 0009AD | Insulate 3" pipe | 10 | SF | 4.50 | 45.00 |
| 0009AE | Insulate 3 1/2" pipe | 10 | SF | 4.50 | 45.00 |
| 0009AF | Insulate 4" pipe | 10 | SF | 4.50 | 45.00 |
| 0009AG | Insulate secondary heating piping (1/2 " thru 1") | 80 | SF | 5.00 | 400.00 |
| 0010 | Insulate fittings, flanges, elbows & tees (1/2" thru 12") | | | | |
| 0010AA | 1/2" thru 1" fittings | 2 | EA | 15.00 | 30.00 |
| 0010AB | 1 1/4" fittings | 2 | EA | 15.00 | 30.00 |
| 0010AC | 1 1/2" fittings | 2 | EA | 15.00 | 30.00 |

SOLICITATION NUMBER F28609-95-R-0014

F28609- 95-C-0036

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

| CLIN | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0010AD | 2" fittings | 2 | EA | 15.00 | 30.00 |
| 0010AE | 2 1/2" fittings | 2 | EA | 20.00 | 40.00 |
| 0010AF | 3" fittings | 2 | EA | 25.00 | 50.00 |
| 0010AG | 3 1/2" fittings | 2 | EA | 25.00 | 50.00 |
| 0010AH | 4" fittings | 2 | EA | 30.00 | 60.00 |

NOT-TO-EXCEED TOTAL FOR OPTIONAL REQUIREMENT NO. 1 (CLINS 0006-0010AH) $1,074,623.5

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

F28609-95-C-0036

| CLIN | DESCRIPTION | QTY | UNIT | AMOUNT |
|---|---|---|---|---|
| 0011 | **OPTIONAL REQUIREMENT NO. 2:** All work to renovate Bldg 2402. Exterior work will be included to the midpoint line with Bldgs 2401 and 2403 as shown on drawing S-2. **Optional Requirement No. 2 is inclusive of CLINs 0011-0015AH.** | | | |
| 0011AA | Construction costs for renovation of Bldg 2402. This item includes all costs for the new court yard, the new lounge additions, the new stairwell additions, the new ramp, removal of load bearing walls in basement, new sidewalks, planters and exterior lighting, and new drainage. **CLIN 0011AA is subject to a cost limitation of $300,000.** | 1 | JB | $ 297,423.00 |
| 0011AB | Repair costs for renovation of Bldg 2402. This item includes all other work to renovate Bldg 2402 not specifically identified in CLINs 0011AA 0012, 0013, 0014, 0015 and 0016. | 1 | JB | $ 842,414.00 |

| CLIN* | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0012 | Termite damage and dry rot repair. | | | | |
| 0012AA | All work to repair rough framing to include but not be limited to; studs, columns, joists, rafters, sill plates, window liners, door liners, double 2X headers, double 2x4 sills, shims and blocking. | 5000 | BF | 4.00 | 20,000.00 |
| 0012AB | All work to repair plywood flooring. | 100 | SF | 3.25 | 325.00 |
| 0013 | Remove asbestos. | | | | |
| 0013AA | Set-up decontamination area prior to asbestos removal procedures and decontamination area clean-up including testing and dismantling of objects and systems. | 3 | EA | 1500.00 | 4500.00 |
| 0013AB | Remove, package, transport and dispose of pipe insulation including testing. No adjustment allowed for fitting. | 200 | LF | 12.00 | 2400.00 |
| 0013AC | Remove, package, transport and dispose of boiler, air handler, and sprayed on insulation, including testing. | 10 | SF | 15.00 | 150.00 |
| 0013AD | Tear down decontamination including testing, and re-establishment of objects and systems. | 3 | EA | 500.00 | 1500.00 |
| 0013AE | Glove bag removals: Remove, package, transport and dispose of asbestos insulation. | 10 | LF | 25.00 | 250.00 |

F28609-95-C-0036

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

| CLIN | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT |
|---|---|---|---|---|---|
| 0013AF | Transite removals: Remove, package, transport and dispose of transite asbestos piping. | 10 | LF | 10.00 | 100.00 |
| 0013AG | Transite removal: Remove, package, transport and dispose of transite asbestos wallboard, shingles and siding. | 10 | SF | 10.00 | 100.00 |
| 0013AH | Repackage, transport and dispose of improperly packaged material. | 1 | CY | 120.00 | 120.00 |
| 0013AJ | Transport and dispose of already packaged material. | 1 | CY | 110.00 | 110.00 |
| 0013AK | Vinyl asbestos tile removals: Remove, package, transport of vinyl asbestos floor tile. | 6500 | SF | 4.00 | 26,000.00 |
| 0013AL | Repair damaged insulation/exterior jacketing of piping. | 10 | SF | 15.00 | 150.00 |
| 0014 | **Insulate pipes** (for existing pipes from which asbestos is removed. Insulation of new piping is part of CLIN 0011AA) | | | | |
| 0014AA | Insulate 1 1/4" - 1 1/2" pipes | 10 | SF | 4.00 | 40.00 |
| 0014AB | Insulate 2" pipes | 10 | SF | 4.00 | 40.00 |
| 0014AC | Insulate 2 1/2" pipe | 10 | SF | 4.00 | 40.00 |
| 0014AD | Insulate 3" pipe | 10 | SF | 4.50 | 45.00 |
| 0014AE | Insulate 3 1/2" pipe | 10 | SF | 4.50 | 45.00 |
| 0014AF | Insulate 4" pipe | 10 | SF | 4.50 | 45.00 |
| 0014AG | Insulate secondary heating piping (1/2" thru 1") | 80 | SF | 5.00 | 400.00 |
| 0015 | **Insulate fittings, flanges, elbows & tees (1/2" thru 12")** | | | | |
| 0015AA | 1/2" thru 1" fittings | 2 | EA | 15.00 | 30.00 |
| 0015AB | 1 1/4" fittings | 2 | EA | 15.00 | 30.00 |
| 0015AC | 1 1/2" fittings | 2 | EA | 15.00 | 30.00 |

EST UNIT EST

F28609- 95-C-0036

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

| CLIN | DESCRIPTION | QTY | UNIT | PRICE | AMT |
|---|---|---|---|---|---|
| 0015AD | 2" fittings | 2 | EA | 15.00 | 30.00 |
| 0015AE | 2 1/2 " fittings | 2 | EA | 20.00 | 40.00 |
| 0015AF | 3" fittings | 2 | EA | 25.00 | 50.00 |
| 0015AG | 3 1/2" fittings | 2 | EA | 25.00 | 50.00 |
| 0015AH | 4" fittings | 2 | EA | 30.00 | 60.00 |

NOT-TO-EXCEED TOTAL FOR OPTIONAL REQUIREMENT NO. 2 (CLINS 00011-0015AH) $1,196,517.00

PART I - THE SCHEDULE
SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS
(Continued)

F28609- 95-C-0036

| CLIN | DESCRIPTION | QTY | UNIT | AMOUNT |
|---|---|---|---|---|
| 0016 | OPTIONAL REQUIREMENT NO. 3: All work to construct building connectors from Bldg 2402, 2401 and 2403 as shown on drawing S-2. | 1 | JB | 3,000.00 |

During evaluation, this item will be prorated as follows and the resulting amounts will be added to CLINs 0001AA, 0006AA, and 0011AA, respectively, to ensure the combined amount does not exceed the cost limitation of $300,000 identified for CLINs 0001AA, 0006AA, and 0011AA:

One-half (1/2) the amount bid for CLIN 0016 will be applied to the amount bid for CLIN 0001AA to determine the combined amount is within the stated cost limitation

One-half (1/2) of the remaining amount bid for CLIN 0016 will be applied to the amount bid for CLIN 0006AA, and one-half (1/2) will be applied to the amount bid for CLIN 0011AA to determine the combined amounts are within the stated cost limitations.

GRAND TOTAL - BASIC REQUIREMENT, OPTIONAL REQUIREMENT NO. 1, OPTIONAL REQUIREMENT NO. 2, AND OPTIONAL REQUIREMNT NO. 3 (CLINS 0001 - 0016) $3,152,174.

F28609-95-C-0036

PART I - THE SCHEDULE
SECTION C
DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

SPECIFICATIONS, STANDARDS AND DRAWINGS
(IAW FAR 10.008)

Specifications, standards or drawings (as applicable) are furnished/listed below:

| ITEM NR | SPECIFICATIONS, STANDARDS AND/OR ATTACHMENTS |
|---|---|
| 1 | Project PTFL 92-1044/1046/1113, Renovate Bldgs. 2401, 2402 & 2403. 523 pages. |
| 2 | Drawing No. 93-08. 115 sheets. |

F28609- 95-C-0036

PART I - THE SCHEDULE
SECTION E
INSPECTION AND ACCEPTANCE

18. 52.246-12 INSPECTION OF CONSTRUCTION (IAW FAR 46.312) JUL 1986

PART I - THE SCHEDULE F28609- 95-C-0036
SECTION F
DELIVERIES OR PERFORMANCE

F-20. 52.212-5 LIQUIDATED DAMAGES--CONSTRUCTION APR 1984
(IAW FAR 12.204(b))

For the purposes of this clause the blank(s) are completed as follows:

(a) the sum of $82.00 for each day of delay.

PART I - THE SCHEDULE F28609-95-C-0036

SECTION H

SPECIAL CONTRACT REQUIREMENTS

J9. REQUIRED INSURANCE
(IAW FAR 28.306(b))

Reference FAR clause entitled "Insurance . . ." the Contractor shall, at its own expense, procure and thereafter maintain the following kinds of insurance with respect to performance under the contract.

a. Workmen's Compensation and Employers Liability Insurance as required by law except that if this contract is to be performed in a State which does not require or permit private insurance, then compliance with the statutory or administrative requirements in any such State will be satisfactory. The required Workmen's Compensation insurance shall extend to cover employer's liability for accidental bodily injury or death and for occupational disease with a minimum liability limit of $100,000.

b. General Liability Insurance. Bodily injury liability insurance, in the minimum limits of $500,000 per occurrence shall be required on the comprehensive form of policy.

c. Automobile Liability Insurance. This insurance shall be required on the comprehensive form of policy and shall provide bodily injury liability and property damage liability covering the operation of all automobiles used in connection with the performance of the contract. At least the minimum limits of $200,000 per person and $500,000 per occurrence for bodily injury and $20,000 per occurrence for property damage shall be required.

J5. 5352.210-9000 ELIMINATION OF CLASS I OZONE DEPLETING SUBSTANCES IN AIR FORCE PROCUREMENTS MAY 1993
(IAW AFFARS 5310.002-71(e))

(a) It is the Air Force policy to eliminate the use of Class I Ozone Depleting Substances (ODS) in all Air Force procurements.

(b) Unless a specific waiver has been authorized, Air Force procurements:
(1) May not include any specification, standard, drawing or other document that requires the use of a Class I ODS in the design, manufacture, test, operation, or maintenance of any system, subsystem, item, component or process;
(2) May not include any specification, standard, drawing or other document that establishes a requirement that can only be met by use of a Class I ODS; and
(3) May not require the delivery of any item of supply that contains a Class I ODS or any service that includes the use of a Class I ODS.

(c) For the purposes of this Air Force policy, the following are Class I ODS:
(1) Halons: 1011, 1202, 1211, 1301 and 2402
(2) Chlorofluorocarbons (CFC): CFC-11, CFC-12, CFC-13, CFC-111, CFC-112, CFC-113, CFC-114, CFC-115, CFC-211, CFC-212, CFC-213, CFC-214, CFC-215, CFC-216, and CFC-217.
(3) Other controlled substances: carbon tetrachloride, methyl chloroform, and methyl bromide.

(d) The Air Force has reviewed the requirements specified in this contract to reflect this policy. Where considered essential, specific authorization has been obtained to continue use of these substances. Notify the contracting officer if ·r additional Class I ODS have been required in the performance of this contract will be delivered as part of end item(s) or service(s) under this contract.

H-703. **FEDERAL HOLIDAYS**

The following Federal Legal holidays are observed by this base:

| | |
|---|---|
| New Year's Day | 1 January |
| Martin Luther King's Birthday | Third Monday in January |
| Presidents Days | Third Monday in February |
| Memorial Day | Last Monday in May |
| Independence Day | 4 July |
| Labor Day | First Monday in September |
| Columbus Day | Second Monday in October |
| Veterans Day | 11 November |
| Thanksgiving Day | Fourth Thursday in November2 |
| Christmas Day | 25 December |

H-704. 28.101-3 **PERFORMANCE AND BID REQUIREMENTS**
(IAW FAR 28.101-3 and FAR 28.102-3)

(Applicable only if the bid/contract price exceeds $25,000.00)

(a) Bid Bond. Bid Guarantee, Each bidder shall submit, with its bid, a bid ırantee in the form of a Bid Bond, (Standard Form 24), with good and sufficient ety or sureties acceptable to the government, or other security as described in – ·333.

(1) The required amount of the bid bond is twenty percent (20%) of the bid price or $3,000,000.00, whichever is lesser. The penal sum of a Bid Bond may be expressed in terms of a percentage of the bid price or as a stipulated monetary amount. When the penal sum is expressed as a percentage, a maximum dollar limitation may be stated.

(b) Performance and Payment Bonds. In accordance with the Miller Act (40 U.S.C. 2701-270f), the bidder to whom award is made shall, within ten (10) calendar days after the date of award, furnish a performance bond (Standard Form 25) and a Payment Bond (Standard Form 25a), each with good and sufficient surety or sureties acceptable to the Government.

(1) Performance Bond: The penal sum of the performance bond shall equal one hundred percent (100%) of the contract price.

(2) Payment Bond:

(i) When the contract price is $1,000,000 or less, the penal sum shall be fifty percent (50%) of the contract price.

(ii) When the contract price is more than $5,000,000 the penal sum shall be forty percent (40%) of the contract price.

(iii) When the contract price is more than $5,000,000, the penal sum 1 be $2,500,000.

(c) The contractor will not be issued a Notice to Proceed or be allowed to start work prior to furnishing the requested bond, including any necessary insurance agreements.

H-705. 5336.292 **PREPARATION OF PROGRESS SCHEDULE AND REPORTS** IAW AFFARS 5336.292)

The reports contemplated by the clause titled, "Schedules for Construction Contract" shall be accomplished on and in accordance with instructions pertaining to AF Form 3064, Contract Progress Schedule, and AF Form 3065, Contract Progress Report.

H-706 **PREPARATION OF MATERIAL APPROVAL SUBMITTALS** (AFFARS 5336.290)

The submittals contemplated by the clause herein entitled "Material and Workmanship" shall be accomplished on and in accordance with instruction pertaining to AF Form 3000, Material Approval Submittal.

GOVERNMENT'S RIGHTS REGARDING OPTION REQUIREMENTS

Subject to the availability of funds, and any other terms and conditions contained herein, the Government reserves the right to purchase any optional requirements not rchased at time of award provided the relative standing of the evaluated low eror remains unchanged.

OPTION TO PURCHASE OPTIONAL REQUIREMENTS

The Government may require performance of work described in the schedule as Optional Requirement No. 1 and/or Optional Requirement No. 2 and Optional Requirement No. 3 at the prices stated in the schedule. If not purchased at time of award of the basic requirement, the Contracting Officer may exercise the option to purchase these items by written notice to the contractor at any time through 31 Mar 1996. Completion of work for the optional requirements shall be as stated in FAR 52.212-3 Commencement, Prosecution and Completion of Work and in accordance with all other terms stated in this contract unless the parties otherwise agree.

MATERIAL PAYMENTS - OPTIONS

Material payments, if authorized by contract, will not be made in advance of the Government's exercise of any option in which the materials will be used.

F28609- 95-C-0036

PART II - CONTRACT CLAUSES
SECTION I
CONTRACT CLAUSES

52.252-2 CLAUSES INCORPORATED BY REFERENCE JUN 1988
(IAW FAR 52.107(b))

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

| NO | FAR PARA | CLAUSE TITLE | DATE |
|---|---|---|---|
| I-11. | 52.202-1 | DEFINITIONS (IAW FAR 2.201) | SEP 1991 |
| I-12. | 52.202-1 | ALTERNATE I (IAW FAR 2.201) | APR 1984 |
| I-18. | 52.203-1 | OFFICIALS NOT TO BENEFIT (IAW FAR 3.102-2) | APR 1984 |
| I-19. | 52.203-3 | GRATUITIES (IAW FAR 3.202) | APR 1984 |
| I-20. | 52.203-5 | COVENANT AGAINST CONTINGENT FEES (IAW FAR 3.404(c)) | APR 1984 |
| I-22. | 52.203-7 | ANTI-KICKBACK PROCEDURES (IAW FAR 3.502-3) | OCT 1988 |
| I-24. | 52.203-9 | REQUIREMENT FOR CERTIFICATE OF PROCUREMENT INTEGRITY--MODIFICATION (IAW FAR 3.104-10(b)) | NOV 1990 |

**Definitions.** The definitions set forth in FAR 3.104-4 are hereby orporated in this clause.

(b) The Contractor agrees that it will execute the certification set forth in paragraph (c) of this clause when requested by the Contracting Officer in connection with the execution of any modification of this contract.

(c) **Certification.** As required in paragraph (b) of this clause, the officer or employee responsible for the modification proposal shall execute the following certification:

**CERTIFICATE OF PROCUREMENT INTEGRITY--MODIFICATION (NOV 1990)**

(1) I, ______________________________ (Name of certifier) am the officer or employee responsible for the preparation of this modification proposal and hereby certify that, to the best of my knowledge and belief, with the exception of any information described in this certification, I have no information concerning a violation or possible violation of subsection 27(a), (b), (d), or (f) of the Office of Federal Procurement

Policy Act, as amended* (41 U.S.C. 423), (hereinafter referred to as "the Act"), as implemented in the FAR, occurring during the conduct of this procurement (contract and modification number). _

(2) As required by subsection 27(e)(1)(B) of the Act, I further certify that to the best of my knowledge and belief, each officer, employee, agent, representative, and consultant of _______________________________ (Name of Offeror) who has participated personally and substantially in the preparation or submission of this proposal has certified that he or she is familiar with, and will comply with, the requirements of subsection 27(a) of the Act, as implemented in the FAR, and will report immediately to me any information concerning a violation or possible violation of subsections 27(a), (b), (d) or (f) of the Act, as implemented in the FAR, pertaining to this procurement.

(3) Violations or possible violations: (Continue on plain bond paper if necessary and label Certificate of Procurement Integrity--Modification (Continuation Sheet), ENTER "NONE" IF NONE EXISTS)

______________________________________________

______________________________________________

______________________________________________

______________________________________________

(Signature of the officer or employee responsible for the modification proposal and date)

______________________________________________ (Typed name of the officer or employee responsible for the modification proposal)

______________________________________________

*Subsections 27(a), (b), and (d) are effective on December 1, 1990. Subsection 27(f) is effective on June 1, 1991.

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER TITLE 18, UNITED STATES CODE, SECTION 1001.

(End of certification)

(d) In making the certification in paragraph (2) of the certificate, the officer or employee of the competing Contractor responsible for the offer or bid, may rely upon a one-time certification from each individual required to submit a certification to the competing Contractor, supplemented by periodic training. These certifications shall be obtained at the earliest possible date after an individual required to certify begins employment or association with the contractor. If a contractor decides to rely on a certification executed prior to the suspension of section 27 (i.e., prior to December 1, 1989), the Contractor shall ensure that an individual who has so certified is notified that section 27 has been reinstated. These certifications shall be maintained by the Contractor for a period of 6 years from the date a certifying employee's employment with the company ends or, for an agency, representative, or consultant, 6 years from the date such individual ceases to act on behalf of the contractor.

(e) The certification required by paragraph (c) of this clause is a material representation of fact upon which reliance will be placed in executing this modification.

| | | | |
|---|---|---|---|
| I-25. | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (IAW FAR 3.104-10(c)) | SEP 1990 |
| :. | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (IAW FAR 3.808(b)) | JAN 1990 |
| I-78. | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (IAW FAR 9.409(b)) | NOV 1992 |
| I-100. | 52.212-3 | COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (IAW FAR 12.104(b)) | APR 1984 |

For the purposes of this provision the blank(s) are completed as follows:

(a) within 10 days
(c) not later than 365 days

| | | | |
|---|---|---|---|
| I-102. | 52.212-8 | DEFENSE PRIORITY AND ALLOCATION REQUIREMENTS (IAW FAR 12.304(b)) | SEP 1990 |
| I-103. | 52.212-12 | SUSPENSION OF WORK (IAW FAR 12.505(a)) | APR 1984 |
| I-119. | 52.214-26 | AUDIT-SEALED BIDDING (IAW FAR 14.201-7(a)) | APR 1985 |
| I-120. | 52.214-27 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (IAW FAR 14.201-7(b)(1)) | DEC 1991 |
| '1. | 52.214-28 | SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (IAW FAR 14.201-7(c)(1)) | DEC 1991 |
| I-122. | 52.214-29 | ORDER OF PRECEDENCE--SEALED BIDDING (IAW FAR 14.201-7(d)) | JAN 1986 |
| I-214. | 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS (IAW FAR 19.708(a)) | FEB 1990 |
| I-220. | 52.219-13 | UTILIZATION OF WOMEN-OWNED SMALL BUSINESSES (IAW FAR 19.902) | AUG 1986 |
| I-221. | 52.219-14 | LIMITATIONS ON SUBCONTRACTING (IAW FAR 19.508(e), and 19.811-3(e)) | JAN 1991 |
| I-226. | 52.220-1 | PREFERENCE FOR LABOR SURPLUS AREA CONCERNS (IAW FAR 20.103(b)) | APR 1984 |

(a) This acquisition is not a set aside for labor surplus area (LSA) concerns. However, the offeror's status as such a concern may affect (1) entitlement to award in case of tie offers or (2) offer evaluation in accordance with the Buy American Act clause of this solicitation. In order to determine whether the offeror is entitled to a preference under (1) or (2) above, the offeror must identify, below, the LSA in which the costs to be incurred on account of manufacturing or production (by the offeror or the first-tier subcontractors) amount to more than 50 percent of the contract price.

Failure to identify the locations as specified above will preclude ideration of the offeror as an LSA concern. If the offeror is awarded a ract as an LSA concern and would not have otherwise qualified for award, the ___eror shall perform the contract or cause the contract to be performed in accordance with the obligations of an LSA concern.

| | | | |
|---|---|---|---|
| I-228. | 52.220-3 | UTILIZATION OF LABOR SURPLUS AREA CONCERNS (IAW FAR 20.302(a)) | APR 1984 |
| I-229. | 52.220-4 | LABOR SURPLUS AREA SUBCONTRACTING PROGRAM (IAW FAR 20.302(b)) | APR 1984 |
| I-245. | 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (IAW FAR 22.101-1(e), and 22.103-5(a)) | APR 1984 |
| I-247. | 52.222-3 | CONVICT LABOR (IAW FAR 22.202) | APR 1984 |
| I-248. | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (IAW FAR 22.305) | MAR 1986 |
| I-250. | 52.222-6 | DAVIS-BACON ACT (IAW FAR 22.407(a)(1)) | NOV 1992 |
| I-251. | 52.222-7 | WITHHOLDING OF FUNDS (IAW FAR 22.407(a)(2)) | FEB 1988 |
| I-252. | 52.222-8 | PAYROLLS AND BASIC RECORDS (IAW FAR 22.407(a)(3)) | FEB 1988 |
| I-253. | 52.222-9 | APPRENTICES AND TRAINEES (IAW FAR 22.407(a)(4)) | FEB 1988 |
| -.254. | 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (IAW FAR 22.407(a)(5)) | FEB 1988 |
| '55. | 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) (IAW FAR 22.407(a)(6)) | FEB 1988 |
| I-256. | 52.222-12 | CONTRACT TERMINATION--DEBARMENT (IAW FAR 22.407(a)(7)) | FEB 1988 |
| I-257. | 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (IAW FAR 22.407(a)(8)) | FEB 1988 |
| I-258. | 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS (IAW FAR 22.407(a)(9)) | FEB 1988 |
| I-259. | 52.222-15 | CERTIFICATION OF ELIGIBILITY (IAW FAR 22.407(a)(10)) | FEB 1988 |
| I-264. | 52.222-26 | EQUAL OPPORTUNITY (IAW FAR 22.810(e)) | APR 1984 |
| I-266. | 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (IAW FAR 22.810(f)) | APR 1984 |
| I-274. | 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (IAW FAR 22.1308(a)(1), and DFARS 222.1308(a)(1)) | APR 1984 |
| I-276. | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (IAW FAR 22.1408(a)) | APR 1984 |

F28609- 95-C-0036

| | | | |
|---|---|---|---|
| I-278. | 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (IAW FAR 22.1308(b)) | JAN 1988 |
| ?. | 52.223-2 | CLEAN AIR AND WATER (IAW FAR 23.105(b)) | APR 1984 |
| .5. | 52.223-6 | DRUG-FREE WORKPLACE (IAW FAR 23.505(b)) | JUL 1990 |
| I-299. | 52.224-1 | PRIVACY ACT NOTIFICATION (IAW FAR 24.104(a)) | APR 1984 |
| I-300. | 52.224-2 | PRIVACY ACT (IAW FAR 24.104(b)) | APR 1984 |
| I-308. | 52.225-5 | BUY AMERICAN ACT-CONSTRUCTION MATERIALS (IAW FAR 25.205) | MAY 1992 |
| I-312. | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (IAW FAR 25.704) | MAY 1992 |
| I-315. | 52.227-1 | AUTHORIZATION AND CONSENT (IAW FAR 27.201-2(a)) | APR 1984 |
| I-317. | 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENTS (IAW FAR 27.202-2) | APR 1984 |
| I-321. | 52.227-4 | PATENT INDEMNITY--CONSTRUCTION CONTRACTS (IAW FAR 27.203-5) | APR 1984 |
| I-333. | 52.228-1 | BID GUARANTEE (IAW FAR 28.101-3(b)) | APR 1984 |
| I-334. | 52.228-2 | ADDITIONAL BOND SECURITY (IAW FAR 28.106-4) | APR 1984 |
| I-337. | 52.228-5 | INSURANCE--WORK ON A GOVERNMENT INSTALLATION (IAW FAR 28.310(a)) | SEP 1989 |
| 45. | 52.228-11 | PLEDGES OF ASSETS (IAW FAR 28.203-6) | FEB 1992 |
| I-352. | 52.229-3 | FEDERAL, STATE, AND LOCAL TAXES (IAW FAR 29.401-3) | JAN 1991 |
| I-354. | 52.229-5 | TAXES--CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO (IAW FAR 29.401-5) | APR 1984 |
| I-387. | 52.232-5 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (IAW FAR 32.111(a)(5)) | APR 1989 |
| I-403. | 52.232-17 | INTEREST (IAW FAR 32.617(a), and 32.617(b)) | JAN 1991 |
| I-409. | 52.232-23 | ASSIGNMENT OF CLAIMS (IAW FAR 32.806(a)(1)) | JAN 1986 |
| I-410. | 52.232-23 | ALTERNATE I (IAW FAR 32.806(a)(2)) | APR 1984 |
| I-415. | 52.232-27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (IAW FAR 32.908(b)) | MAR 1994 |

For the purposes of this clause the blank(s) are completed as follows:

(a)(1)(i)(A) 14 days
(a)(4)(i) 7 days
(b)(2) 30 days

| | | | |
|---|---|---|---|
| I-417. | 52.233-1 | DISPUTES<br>(IAW FAR 33.215) | DEC 1991 |
| I-418. | 52.233-1 | ALTERNATE I<br>(IAW FAR 33.215) | DEC 1991 |
| ). | 52.233-3 | PROTEST AFTER AWARD<br>(IAW FAR 33.106(b)) | AUG 1989 |
| ₄5. | 52.236-2 | DIFFERING SITE CONDITIONS<br>(IAW FAR 36.502) | APR 1984 |
| I-446. | 52.236-3 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK<br>(IAW FAR 36.503) | APR 1984 |
| I-448. | 52.236-5 | MATERIAL AND WORKMANSHIP<br>(IAW FAR 36.505) | APR 1984 |
| I-449. | 52.236-6 | SUPERINTENDENCE BY THE CONTRACTOR<br>(IAW FAR 36.506) | APR 1984 |
| I-450. | 52.236-7 | PERMITS AND RESPONSIBILITIES<br>(IAW FAR 36.507) | NOV 1991 |
| I-451. | 52.236-8 | OTHER CONTRACTS<br>(IAW FAR 36.508) | APR 1984 |
| I-452. | 52.236-9 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS<br>(IAW FAR 36.509) | APR 1984 |
| I-453. | 52.236-10 | OPERATIONS AND STORAGE AREAS<br>(IAW FAR 36.510) | APR 1984 |
| I-454. | 52.236-11 | USE AND POSSESSION PRIOR TO COMPLETION<br>(IAW FAR 36.511) | APR 1984 |
| I-455. | 52.236-12 | CLEANING UP<br>(IAW FAR 36.512) | APR 1984 |
| 56. | 52.236-13 | ACCIDENT PREVENTION<br>(IAW FAR 36.513(a)) | NOV 1991 |
| 59. | 52.236-15 | SCHEDULES FOR CONSTRUCTION CONTRACTS<br>(IAW FAR 36.515) | APR 1984 |
| I-466. | 52.236-21 | SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION<br>(IAW FAR 36.521) | APR 1984 |
| I-541. | 52.242-13 | BANKRUPTCY<br>(IAW FAR 42.903) | APR 1991 |
| I-559. | 52.243-4 | CHANGES<br>(IAW FAR 43.205(d)) | AUG 1987 |
| I-568. | 52.244-1 | SUBCONTRACTS (FIXED-PRICE CONTRACTS)<br>(IAW FAR 44.204(a)(1)) | APR 1991 |
| I-624. | 52.246-21 | WARRANTY OF CONSTRUCTION<br>(IAW FAR 46.710(e)(1)) | APR 1984 |
| I-676. | 52.248-3 | VALUE ENGINEERING--CONSTRUCTION<br>(IAW FAR 48.202) | MAR 1989 |
| I-684. | 52.249-2 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE)<br>(IAW FAR 49.502(b)(1)(i)) | APR 1984 |
| I-685. | 52.249-2 | ALTERNATE I<br>(IAW FAR 49.502(b)(1)(ii)) | APR 1984 |

| | | | |
|---|---|---|---|
| I-702. | 52.249-10 | DEFAULT (FIXED-PRICE CONSTRUCTION)<br>(IAW FAR 49.504(c)(1)) | APR 1984 |
| `3. | 52.252-6 | AUTHORIZED DEVIATIONS IN CLAUSES<br>(IAW FAR 52.107(f)) | APR 1984 |

The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.
(b) The use in this solicitation or contract of any Defense Federal Acquisition Regulation Supplement (48 CFR Chapter 2) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

| | | | |
|---|---|---|---|
| I-750. | 52.253-1 | COMPUTER GENERATED FORMS<br>(IAW FAR 53.111) | JAN 1991 |
| IA-20. | 252.203-7000 | STATUTORY PROHIBITION ON COMPENSATION TO FORMER DEPARTMENT OF DEFENSE EMPLOYEES<br>(IAW DFARS 203.170-4) | DEC 1991 |
| IA-22. | 252.203-7001 | SPECIAL PROHIBITION ON EMPLOYMENT<br>(IAW DFARS 203.570-5) | APR 1993 |
| IA-25. | 252.203-7003 | PROHIBITION AGAINST RETALIATORY PERSONNEL ACTIONS<br>(IAW DFARS 203.7108) | APR 1992 |
| IA-33. | 252.204-7003 | CONTROL OF GOVERNMENT PERSONNEL WORK PRODUCT<br>(IAW DFARS 204.404-70(b)) | APR 1992 |
| IA-40. | 252.205-7000 | PROVISION OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS<br>(IAW DFARS 205.470-2) | DEC 1991 |
| IA-90. | 252.209-7000 | ACQUISITION FROM SUBCONTRACTORS SUBJECT TO ON-SITE INSPECTION UNDER THE INTERMEDIATE-RANGE NUCLEAR FORCES (INF) TREATY<br>(IAW DFARS 209.103-70) | DEC 1991 |
| .-223. | 252.219-7002 | NOTICE OF SMALL DISADVANTAGED BUSINESS SET-ASIDE<br>(IAW DFARS 219.508-70) | MAY 1994 |
| IA-282. | 252.223-7006 | PROHIBITION ON STORAGE AND DISPOSAL OF TOXIC AND HAZARDOUS MATERIALS<br>(IAW DFARS 223.7103) | APR 1993 |
| IA-293. | 252.225-7012 | PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES<br>(IAW DFARS 225.7002-4(a)) | MAY 1994 |
| IA-312. | 252.225-7025 | FOREIGN SOURCE RESTRICTIONS<br>(IAW DFARS 225.7105(a)) | APR 1993 |
| IA-312H. | 252.225-7031 | SECONDARY ARAB BOYCOTT OF ISRAEL<br>(IAW DFARS 225.770-5) | JUN 1992 |
| IA-350. | 252.227-7033 | RIGHTS IN SHOP DRAWINGS<br>(IAW DFARS 227.405-78(b)(1)(ii)) | APR 1966 |
| IA-366. | 252.228-7006 | PROSPECTIVE SUBCONTRACTOR REQUESTS FOR BONDS<br>(IAW DFARS 228.106-4-70) | SEP 1992 |
| IA-399. | 252.231-7000 | SUPPLEMENTAL COST PRINCIPLES<br>(IAW DFARS 231.100-70) | DEC 1991 |
| IA-422. | 252.232-7006 | REDUCTION OR SUSPENSION OF CONTRACT PAYMENTS UPON FINDING OF FRAUD<br>(IAW DFARS 232.111-70) | AUG 1992 |

| | | | |
|---|---|---|---|
| IA-425. | 252.233-7000 | CERTIFICATION OF CLAIMS AND REQUESTS FOR ADJUSTMENT OR RELIEF (IAW DFARS 233.7001) | MAY 1994 |
| 462. | 252.236-7000 | MODIFICATION PROPOSALS - PRICE BREAKDOWN (IAW DFARS 236.570(a)(1)) | DEC 1991 |
| 474. | 252.236-7005 | AIRFIELD SAFETY PRECAUTIONS (IAW DFARS 236.570(b)(3)) | DEC 1991 |
| IA-632. | 252.242-7000 | POSTAWARD CONFERENCE (IAW DFARS 242.570) | DEC 1991 |
| IA-648. | 252.243-7001 | PRICING OF CONTRACT MODIFICATIONS (IAW DFARS 243.205-71) | DEC 1991 |
| IA-745. | 252.247-7023 | TRANSPORTATION OF SUPPLIES BY SEA (IAW DFARS 247.573(b)) | DEC 1991 |

(a) Definitions.

As used in this clause--

(1) "Components" means articles, materials, and supplies incorporated directly into end products at any level of manufacture, fabrication, or assembly by the Contractor or any subcontractor.

(2) "Department of Defense" (DoD) means the Army, Navy, Air Force, Marine Corps, and defense agencies.

(3) "Foreign flag vessel" means any vessel that is not a U.S.-flag vessel.

(4) "Ocean transportation" means any transportation aboard a ship, vessel, boat, barge, or ferry through international Waters.

(5) "Subcontractor" means a supplier, materialman, distributor, or vendor at any level below the prime contractor whose contractual obligation to perform results from, or is conditioned upon, award of the prime contract and who is performing any part of the work or other requirement of the prime contract.

(6) "Supplies" means all property, except land and interests in land, that is clearly identifiable for eventual use by or owned by the DoD at the time of transportation by sea.

(i) An item is clearly identifiable for eventual use by the DoD if, for example, the contract documentation contains a reference to a DoD contract number or a military destination.

(ii) "Supplies" includes (but is not limited to) public works; buildings and facilities; ships; floating equipment and vessels of every character, type, and description, with parts, subassemblies, accessories, and equipment; machine tools; material; equipment; stores of all kinds; end items; construction materials; and components of the foregoing.

(7) "U.S.-flag vessel" means a vessel of the United States or belonging to the United States, including any vessel registered or having national status under the laws of the United States.

(b) The Contractor shall employ U.S.-flag vessels in the transportation by sea of any supplies to be furnished in the performance of this contract. The Contractor and its subcontractors may request that the Contracting Officer authorize shipment in foreign-flag vessels, or designate available U.S.-flag vessels, if the Contractor or a subcontractor believes that-

(1) U.S.-flag vessels are not available for timely shipment;

(2) The freight charges are inordinately excessive or unreasonable; or

(3) Freight charges are higher than charges to private persons for transportation of like goods.

9

F28609-95-C-0036

(c) The Contractor must submit any request for use of other than U.S.-flag vessels in writing to the Contracting Officer at least 45 days prior to the sailing date ıssary to meet its delivery schedules. The Contracting Officer will process .ests submitted after such date(s) as expeditiously as possible, but the racting Officer's failure to grant approvals to meet the shipper's sailing date .ı not of itself constitute a compensable delay under this or any other clause of this contract. Requests shall contain at a minimum--

(1) Type, weight, and cube of cargo;
(2) Required shipping date;
(3) Special handling and discharge requirements;
(4) Loading and discharge points;
(5) Name of shipper and consignee;
(6) Prime contract number; and
(7) A documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted. Copies of telephone notes, telegraphic and facsimile message or letters will be sufficient for this purpose.

(d) The Contractor shall, within 30 days after each shipment covered by this clause, provide the Contracting Officer and the Division of National Cargo, Office of Market Development, Maritime Administration, U.S. Department of Transportation, Washington, DC 20590, one copy of the rated on board vessel operating carrier's ocean bill of lading, which shall contain the following information--

(1) Prime contract number;
(2) Name of vessel;
(3) Vessel flag of registry;
(4) Date of loading;
(5) Port of loading;
(6) Port of final discharge;
(7) Description of commodity;
(8) Gross weight in pounds and cubic feet if available;
(9) Total ocean freight in U.S. dollars; and
(10) Name of the steamship company.

(e) The Contractor agrees to provide with its final invoice under this contract a representation that to the best of its knowledge and belief--

(1) No ocean transportation was used in the performance of this contract;
(2) Ocean transportation was used and only U.S.-flag vessels were used for all ocean shipments under the contract;
(3) Ocean transportation was used, and the Contractor had the written consent of the Contracting Officer for all non-U.S.-flag ocean transportation; or
(4) Ocean transportation was used and some or all of the shipments were made on non-U.S.-flag vessels without the written consent of the Contracting Officer. The Contractor shall describe these shipments in the following format:

| ITEM DESCRIPTION | CONTRACT LINE ITEMS | QUANTITY |
|---|---|---|
| TOTAL | | |

(f) If the final invoice does not include the required representation, the Government will reject and return it to the Contractor as an improper invoice for the purposes of the Prompt Payment clause of this contract. In the event there has unauthorized use of non-U.S.-flag vessels in the performance of this contract, Contracting Officer is entitled to equitably adjust the contract, based on the thorized use.

(g) The Contractor shall include this clause, including this paragraph (g) in all subcontracts under this contract, which exceed the small purchase limitation of section 13.000 of the Federal Acquisition Regulation.

IA-746. 252.247-7024 **NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA** DEC 1991
(IAW DFARS 247.573(c))

(a) The Contractor has indicated by the response to the solicitation provision, Representation of Extent of Transportation by Sea, that it did not anticipate transporting by sea any supplies. If, however, after the award of this contract, the Contractor learns that supplies, as defined in the Transportation of Supplies by Sea clause of this contract, will be transported by sea, the Contractor--

(1) Shall notify the Contracting Officer of that fact; and

(2) Hereby agrees to comply with all the terms and conditions of the Transportation of Supplies by Sea clause of this contract.

(b) The Contractor shall include this clause, including this paragraph (b), revised as necessary to reflect the relationship of the contracting parties, in all subcontracts hereunder.

F28609- 95-C-0036

PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS
SECTION J
LIST OF ATTACHMENTS
(All listed attachments are at the end of this document)

| ATTACHMENT | TITLE | PAGES |
| --- | --- | --- |
| No. 1 | Wage Determination Decision Number NJ 950002 | 10 |
| No. 2 | Material Approval Submittal List | 3 |

SOL .ITATION NO: F28609-9

F28609- 95-C-01

RATES OF WAGES

Date of Decision: Undated

Determination Decision Number NJ 950002

Department of the Air Force STATE: New Jersey COUNTY: Burlington

Construction Type: Building, Heavy & Highway

Construction Description: Building (excluding single family homes and apartments up to and including 4 stories), Heavy and Highway Construction Projects

| MODIFICATION NUMBER | PUBLICATION DATE | MODIFICATION NUMBER | PUBLICATION DATE |
|---|---|---|---|
| 0 | 02/10/1995 | 4 | 06/02/1995 |
| 1 | 03/03/1995 | 5 | 06/30/1995 |
| 2 | 04/07/1995 | 6 | 07/07/1995 |
| 3 | 05/05/1995 | | |

---

CLASS OF WORK

| | RATES | FRINGES |
|---|---|---|
| ASBE0089G 07/01/1994 | | |
| ASBESTOS WORKERS | 24.115 | 11.825 |
| BOIL0028C 08/01/1994 | | |
| BOILERMAKERS | 28.37 | 1.74+41% |
| J0006A 05/01/1994 | | |
| RICKLAYER, STONE MASON, MARBLE MASON, CEMENT MASON, PLASTERER, TILE LAYER, AND TERRAZZO WORKER | 23.96 | 10.15 |
| CARP0454B 07/01/1994 | | |
| DOCK BUILDER & PILEDRIVERMEN: | 20.50 | 14.29+A |

FOOTNOTE:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY, PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERANS DAY, PROVIDED THE EMPLOYEE WORKS ANY OF THE 3 DAYS IN THE 5-DAY WORK WEEK PRECEEDING THE HOLIDAY AND THE FIRST WORK DAY AFTER THE HOLIDAY

| | RATES | FRINGES |
|---|---|---|
| CARP1456G 07/01/1994 | | |
| DIVER | 32.77 | 16.20 |
| DIVER TENDER | 24.66 | 16.20 |
| CARP1489A 05/01/1994 | | |
| CARPENTER | 25.94 | 37% |
| MILWRIGHT | 26.19 | 37% |
| CARP2212B 05/01/1994 | | |
| SOFT FLOOR LAYER | 23.90 | 31.12% |

ATTACHMENT J1

F28609- 95-C-0036

RATES OF WAGES
(Continued)

| | RATES | FRINGES |
|---|---|---|
| .C0269D 10/01/1994 | | |
| LINE CONSTRUCTION (EXCEPT RAILROAD WORK): | | |
| LINEMEN, CABLE SPLICERS, TRUCK DRIVERS, EQUIPMENT OPERATORS AND TECHNICIANS | 28.28 | 4.20+28% |
| GROUNDMEN AND WINCH OPERATORS | 22.62 | 4.20+28% |

| | RATES | FRINGES |
|---|---|---|
| ELEC0269E 10/01/1994 | | |
| ELECTRICIANS AND CABLE SPLICERS | 28.28 | 4.20+28% |

| | RATES | FRINGES |
|---|---|---|
| ELEC0999A 12/03/1994 | | |
| LINE CONSTRUCTION (RAILROAD ONLY): | | |
| LINEMEN | 16.96 | 25% |
| LINE EQUIPMENT OPERATOR | 16.20 | 25% |
| GROUNDMAN WINCH OPERATOR | 13.07 | 25% |
| GROUNDMAN | 11.06 | 25% |
| DYNAMITE MAN | 14.20 | 25% |
| STREET LIGHT MECHANIC | 12.97 | 25% |
| LINE EQUIPMENT MECHANIC | 12.90 | 25% |

| | RATES | FRINGES |
|---|---|---|
| ELEV0999A 12/03/1992 | | |
| ELEVATOR MECHANICS | 24.01 | 5.22+A |

FOOTNOTE:

A: PAID HOLIDAYS: NEW YEAR' DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY, AND CHRISTMAS DAY

PAID VACATION: EMPLOYER CONTRIBUTES 4% OF BASIC HOURLY RATE AS VACATION PAY CREDIT FOR 5 YEARS OR MORE OF SERVICE, AND 2% FOR 6 MONTHS TO 5 YEARS OF SERVICE.

| | RATES | FRINGES |
|---|---|---|
| ENGI0825B 07/01/1995 | | |
| POWER EQUIPMENT OPERATOR: | | |
| GROUP 1 | 28.62 | 12.65+A+B |
| GROUP 2 | 27.03 | 12.65+A+B |
| GROUP 3 | 25.12 | 12.65+A+B |
| GROUP 4 | 23.49 | 12.65+A+B |
| GROUP 5 | 21.78 | 12.65+A+B |
| CROUP 6 | 30.44 | 12.65+A+B |

POWER EQUIPMENT OPERATORS CLASSIFICATIONS

GROUP 1: Autograde - Combination Subgrader; base metal spreader and 7 base trimmer (CMI and similar types); autograde placer, trimmer, spreader combination (CMI and similar types); autograde slipform paver (CMI and similar types); backhoe; central power plants (all types); concrete paving machines; cranes (all types, including overhead and straddle traveling type); cranes; gantry; derricks (land or floating); drillmaster, quarrymaster (down the hole drill) rotary drill; self propelled hydraulic drill; self-powered drill; dragline; elevator graders; front end loaders (5 yds and over); gradalls; grader; raygo; locomotive (large); mucking machines; pavement and concrete breaker, i.e., superhammer and hoe ram; pile driver, length of boom including length of leads, shall determine premium rate applicable; roadway surface grinder; scooper (loader and shovel); shovels; tree chopper with boom; trench machines.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

GROUP 2: "A" frame; backhoe (combination); boom attachment on loaders (rate based on ; of bucket) not applicable to pipehook, boring and drilling machines; brush chopper; shredder and tree shredder; tree shearer; cableways; carryalls; concrete pump; concrete pumping system; pumpcrete and similar types; conveyors, 125 ft. and over; drill doctor including dust collector (maintenance); front end loaders (2 yds. but less than 5 yds.); graders (finisher); groove cutting machine (ride on type); header planner; hoists (all types hoists, shall also include steam, gas, diesel, electric, air hydraulic, single and double drum, concrete brick shaft caisson, snorkel roof, and/or any other similar type hoisting machines, portable or stationary, except Chicago boom type); hoist (Chicago boom type); hydraulic cranes, 10 tons and under; hydro-axle; jacks screw air hydraulic power operated unit or console type (not hand jack or pile load test type); log skidder, pans, pavers (all concrete); pumpcrete machines; squeezecrete and concrete pumping (regardless of size); scrapers; side booms' straddle carrier; ross and similar types; winch truck (hoisting).

GROUP 3: Asphalt curbing machine; asphalt plant engineer; asphalt spreader; autograde tube finisher and texturing machine (CMI and similar types); autograde curercrete machine (CMI and similar types); autograde curb trimmer and sidewalk; shoulder; slipform (CMI and similar types); bar bending machines (power); batchers; batching plant and crusher on side; belt conveyer systems; boom type skimmer machines; bridge deck finisher; bulldozer (all); car dumpers (railroad); compressor and blower type units (used independently or mounted on dual purposes trucks, on job site or in conjunction with job site, in loading and unloading of concrete, cement, fly ash, instancrete, or similar type materials); compressor (2 or 3) (battery); concrete finishing machines; concrete saws and cutters ide on type); concrete spreaders; hetzel, rexomatic and similar types; concrete rators; conveyors, under 125 ft.; crushing machines; ditching machine, small tchwitch or similar type); dope pots (mechanical with or without pump); dumpsters evator; fireman; forklifts (economobile, lull and similar types of equipment); front end loader (1 yd and over but less than 2 yds); generators (2 or 3) in battery; giraffe grinders; graders and motor patrols; gunnite machines (excluding nozzle); hammer, vibratory (in conjunction with generator); hoist (roof, tugger, aerial platform hoist and house cars); hoppers; hopper doors (power operated); ladders (motorized); laddervator; locomotive, dinky type; maintenance; utility man; mechanics; mixers (except paving mixers); motor patrols and graders; pavement breakers, small; self-propelled ride on type (also maintaining compressor or hydraulic unit); pavement breaker, truck mounted; pipe bending machine (power); pitch pump; plaster pump (regardless of size); post hole digger (post pounder and auger); rod bending machines (power); roller, black top; scales, power; seaman pulverizing mixer; shoulder widener; silos; skimmer machines (boom type); steel cutting machine, services and maintaining tractors; tug captain; vibrating plants (used in conjunction with unloading); welder and repair mechanics.

GROUP 4: Brooms and sweepers, chippers, compressor (single), concrete spreaders (small type), conveyor loaders (not including elevator graders), engines, large diesel (1620 H.P.) and staging pump, farm tractors; fertilizing equipment (operation and maintenance); fine grade machine (small type); form line graders (small type); front loader (under 1 yd.); generator (single); grease, gas, fuel and oil supply trucks; heaters (nelson or other type including propane, natural gas or flow-type units); lights; portable generating light plants; mixers, concrete, small; mulching equipment (operation and maintenance); pumps (4 inch suction and over including submersible pumps); pumps (2 or

RATES OF WAGES
(Continued)

F28609- 95-C-0036

less than 4 inch suction and over including submersible pumps); pumps (diesel engine and hydraulic) immaterial of power; road finishing machines (small types); rollers; grade, fill or stone base; seeding equipment (operations and maintenance of); sprinkler and water pump trucks; steam jennies and boilers; stone spreader; tamping machines, vibrating ride-on; temporary heating plant (nelson or other type, including propane, natural gas or flow type units); water and sprinkler trucks; welding machines (gas, diesel and/or electric converters of any type, single, two or three in a battery); welding systems, multiple (rectifier transformer type); wellpoint system.

GROUP 5: Oiler.

GROUP 6: Helicopter pilot.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY; PLUS WASHINGTON'S BIRTHDAY AND VETERANS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| ENGI0825C 07/01/1994 | RATES | FRINGES |
|---|---|---|
| POWER EQUIPMENT OPERATOR: | | |
| TANK ERECTION: | | |
| GROUP 1 | 29.96 | 12.65+A+B |
| GROUP 2 | 29.12 | 12.65+A+B |
| GROUP 3 | 31.10 | 12.65+A+B |
| GROUP 4 | 27.03 | 12.65+A+B |
| GROUP 5 | 21.82 | 12.65+A+B |

TANK ERECTION CLASSIFICATIONS

GROUP 1: Operating Engineers--on all cranes, derricks, etc., with booms including jib 140 ft or more above the ground.

GROUP 2: Operating Engineers--on all equipment, including cranes, derricks, etc., with booms including jib, less than 140 ft above the ground.

GROUP 3: Helicopters--Pilot.

GROUP 4: Air compressors, welding machines and generators (gas, diesel, or electrical driven equipment and sources of power from a permanent plant, i.e., steam, compressed air, hydraulic or other power, for the operating of any machine or automatic tools used in the erection, alteration, repair and dismantling of tanks and any and all "dual purpose" trucks used on the construction job site.

GROUP 5: Oiler.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY; PLUS WASHINGTON'S BIRTHDAY AND VETERANS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| ENGI0825D 07/01/1995 | RATES | FRINGES |
|---|---|---|
| POWER EQUIPMENT OPERATOR: | | |
| STEEL ERECTION: | | |
| GROUP 1 | 31.39 | 12.65+A+B |
| GROUP 2 | 30.48 | 12.65+A+B |
| GROUP 3 | 28.19 | 12.65+A+B |

F28609- 95-C-0036

RATES OF WAGES
(Continued)

| | | |
|---|---|---|
| GROUP 4 | 25.53 | 12.65+A+B |
| GROUP 5 | 24.00 | 12.65+A+B |
| GROUP 6 | 22.24 | 12.65+A+B |
| GROUP 7 | 32.75 | 12.65+A+B |

STEEL ERECTION CLASSIFICATIONS

GROUP 1: Cranes - (all cranes, land or floating with booms including jib 140 ft. and over, above ground); derricks - (all derricks, land or floating with boom including jib 140 ft. and over, above ground).

GROUP 2: Cranes - (all cranes, land or floating with booms including jib less than 140 ft. above ground); derricks (all derricks, land or floating with booms including jib, less than 140 ft. above ground).

GROUP 3: "A" frame; cherry pickers 10 ton and under; hoists; all types hoists shall also include steam, gas, diesel, electric, air hydraulic, single and double drum, concrete, brick shaft caisson, or any other similar type hoisting machines, portable or stationary, except Chicago boom type; jacks-screw air hydraulic power operated unit console type (not hand jack or pile load test type) side booms.

GROUP 4: Aerial platform used hoist; compressor, 2 or 3 in battery; elevators or house cars; conveyors and tugger hoists; fireman; forklift; generators, 2 or 3 maintenance-utility man; rod bending machine (power); welding machines--(gas or electric, 2 or 3 in battery, including diesels); captain power boats; tug master power boats.

GROUP 5: Compressor, single, welding machine, single, gas, electric, converters of any type, diesel; welding system multiple (rectifier transformer type); generator, single.

GROUP 6: Straddle carrier.

GROUP 7: Helicopter pilot.

OOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY AND VETERANS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| | RATES | FRINGES |
|---|---|---|
| ENGI0825E 07/01/1994 | | |
| POWER EQUIPMENT OPERATOR: | | |
| OILOSTATIC MAINLINES AND TRANSPORTATION PIPELINES: | | |
| GROUP 1 | 28.10 | 12.65+A+B |
| GROUP 2 | 26.45 | 12.65+A+B |
| GROUP 3 | 24.31 | 12.65+A+B |
| GROUP 4 | 22.81 | 12.65+A+B |
| GROUP 5 | 21.09 | 12.65+A+B |
| GROUP 6 | 30.03 | 12.65+A+B |

OILOSTATIC MAINLINES AND TRANSPORTATION PIPELINES CLASSIFICATIONS

GROUP 1: Backhoe; cranes (all types); draglines; front-end loaders (5 yds and over); gradalls; scooper (loader and shovel); koehring and trench machines.

GROUP 2: "A" frame; backhoe (combination hoe loader); boring and drilling machines; ditching machine, small (ditchwitch or similar type); fork lifts; front end loaders (2 yds. and over but less than 5 yds.); graders, finish (fine); hydraulic cranes, 10 tons and under (over 10 tons - crane rate applies); side booms; and winch trucks (hoisting).

GROUP 3: Backfiller; brooms and sweepers; bulldozers; compressors (2 or 3 in battery); front-end loaders (under 2 yds.); generators; giraffe grinders; graders and motor patrols; mechanic; pipe bending machine (power); tractors; water and sprinkler trucks, welder and repair mechanic.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

GROUP 4: Compressor (single); dope pots (mechanical with or without pump); dust collectors; farm tractors; pumps (4 inch suction and over); pumps (2 or less than 4 inch suction); pumps, diesel engine and hydraulic (immaterial of power); welding machines; gas or electric converters of any type, single; welding machines, gas or electric converters of any type, 2 or 3 in battery; multiple welders; wellpoint systems (including installation and maintenance).

GROUP 5: Oiler, grease, gas, fuel and supply trucks and tire repair and maintenance.

GROUP 6: Helicopter - pilot.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; WASHINGTON'S BIRTHDAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; VETERAN'S DAY; THANKSGIVING DAY; AND CHRISTMAS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| IRON0068A 07/01/1994 | RATES | FRINGES |
|---|---|---|
| IRONWORKERS: | | |
| STRUCTURAL, ORNAMENTAL | 24.35 | 15.82 |
| REINFORCING (CONCRETE RODS) | 23.35 | 15.82 |

| LABO0172A 03/01/1995 | RATES | FRINGES |
|---|---|---|
| LABORER (HEAVY & HIGHWAY CONSTRUCTION) | | |
| GROUP 1 | 19.70 | 8.05+U |
| GROUP 2 | 19.90 | 8.05+U |
| GROUP 3 | 20.20 | 8.05+U |
| GROUP 4 | 20.40 | 8.05+U |
| GROUP 5 | 20.65 | 8.05+U |
| GROUP 6 | 24.20 | 8.05+U |
| GROUP 7 | 22.70 | 8.05+U |

LABORER (HEAVY AND HIGHWAY CONSTRUCTION) CLASSIFICATIONS

GROUP 1: Common laborers, landscape laborers, railroad track laborers, flagmen, salamander tenders, pitman, dumpman, waterproofing laborers, rakers and tampers on cold patch work, and wrapping and coating of all pipes.

GROUP 2: Powder carrier, magazine tender, wagon drill operator helpers, drill master helper, and signalman.

GROUP 3: Sewer pipe, laser men, conduit and duct line layer, power tool operator, jack hammer, chipping hammer, pavement breaker, power buggy, concrete cutter, asphalt cutter, sheet hammer and tree cutter operators, sandblasting cutting, burning and such other power tools used to perform work usually done manually by laborers.

GROUP 4: Wagon drill operator, timberman and drill master.

GROUP 5: Finisher, manhole, catch basin or inlet builder, form setter, rammer, paver, gunnite nozzleman and stonecutter.

GROUP 6: Blaster.

GROUP 7: Hazardous waste laborer.

FOOTNOTES:

U. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERAN'S DAY, PROVIDED THE EMPLOYEE WORKS ON 3 DAYS FOR THE SAME EMPLOYER WITHIN A PERIOD OF TEN WORKING DAYS CONSISTING OF FIVE WORKING DAYS BEFORE AND FIVE WORKING DAYS AFTER THE DAY UPON WHICH THE HOLIDAY FALLS OR IS OBSERVED.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

| )172B 03/01/1995 | RATES | FRINGES |
|---|---|---|
| BORER: | | |
| FREE AIR TUNNEL: | | |
| GROUP 1 | 23.20 | 8.05+U |
| GROUP 2 | 20.75 | 8.05+U |
| GROUP 3 | 20.60 | 8.05+U |
| GROUP 4 | 20.10 | 8.05+U |

FREE AIR TUNNEL CLASSIFICATION

GROUP 1: Blasterers

GROUP 2: Skilled men (including miners, drill runners, iron men, maintenance men, conveyor men, safety miners, riggers, block layers, cement finishers, rod men, caulkers, powder carriers, all other skilled men).

GROUP 3: Semi-skilled men (including miner's helpers, chuck tenders, track men, nippers, brakemen, derail men, cable men, hose men, grout men, gravel men, form men, bell or signal men (top or bottom), form workers and movers, concrete workers, shaft men, tunnel laborers, caulkers' helpers, all other semi-skilled).

GROUP 4: All others (including powder watchmen, change house attendance, top laborers).

FOOTNOTE:

U. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERAN'S DAY, PROVIDED THE EMPLOYEE WORKS ON 3 DAYS FOR THE SAME EMPLOYER WITHIN A PERIOD OF TEN WORKING DAYS CONSISTING OF FIVE WORKING DAYS BEFORE AND FIVE WORKING DAYS AFTER THE DAY UPON WHICH THE HOLIDAY FALLS OR IS OBSERVED.

| ɔ0172C 03/01/1995 | RATES | FRINGES |
|---|---|---|
| ABORERS - ASPHALT CONSTRUCTION | | |
| STREET: | | |
| HEAD RAKERS | 20.50 | 8.05+D |
| RAKERS & SCREED MEN | 20.35 | 8.05+D |
| TAMPERS, SMOOTHERS, KETTLEMEN, PAINTERS, SHOVELERS & ROLLER BOYS | 20.10 | 8.05+D |
| PLANT: | | |
| SCALE MIXERS & BURNER MEN | 20.35 | 8.05+D |
| FEEDERS AND DUST MEN | 20.10 | 8.05+D |

FOOTNOTE:

D. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERAN'S DAY, PROVIDED THE EMPLOYEE WORKS ON 3 DAYS FOR THE SAME EMPLOYER WITHIN A PERIOD OF TEN WORKING DAYS CONSISTING OF FIVE WORKING DAYS BEFORE AND FIVE WORKING DAYS AFTER THE DAY UPON WHICH THE HOLIDAY FALLS OR IS OBSERVED.

| LABO0369A 05/01/1993 | RATES | FRINGES |
|---|---|---|
| LABORERS (BUILDING CONSTRUCTION) | 16.30 | 9.47 |

| PAIN1095B 12/01/1993 | RATES | FRINGES |
|---|---|---|
| GLAZIERS | 9.41 | .87 |

F28609- 95-C-0036

RATES OF WAGES
(Continued)

| | RATES | FRINGES |
|---|---|---|
| :1171A 06/01/1994 | | |
| ᵣAINTERS | | |
| COMMERCIAL BRUSH, ROLLER AND PAPERHANGING | 17.20 | 5.00 |
| COMMERCIAL SPRAY OR DIPPING, OR THE USE OF ANY SPECIAL MATERIAL, BRUSHING OR ROLLING ON STEEL TANKS, OR WORKING SWING OR CHAIR | 17.95 | 5.00 |
| SANDBLASTING OR POWER TOOLS; SPRAYING OR THE USE OF ANY SPECIAL MATERIAL ON STEEL OR TANKS | 18.70 | 5.00 |

| PAIN1976A 02/01/1995 | RATES | FRINGES |
|---|---|---|
| DRYWALL TAPERS & FINISHERS | 24.25 | 11.16 |

| PLUM0009I 03/01/1995 | RATES | FRINGES |
|---|---|---|
| AIR CONDITIONING AND REFRIGERATION MECHANICS | 20.10 | 6.16 |

SCOPE OF WORK:

Installation of commercial, industrial, residential air conditioning and refrigeration ·ipment whose combined tonnage does not exceed fifteen (15) tons. Installation of ɜr-cooled air-conditioning that does not exceed 10 tons (includes the piping of ɔonent system and the erection of the water tower). Installation of air-cooled air .ditioning that does not exceed 15 tons. Installation of commercial, industrial and residential air conditioning equipment of the "packaged-unitary" rooftop type, the combined tonnage of which does not exceed 35 tons. Packaged-Unitary Air Conditioning and Refrigeration Institute (ARI) as follows: "A unitary air conditioner consists of one or more factory made assemblies which normally include an evaporator or cooling coil, an air moving device, a compressor and condenser combination, and may include a heating function as well." Any and all related piping to the above installation will be done under the appropriate trade jurisdiction.

| PLUM0009J 07/01/1994 | RATES | FRINGES |
|---|---|---|
| PLUMBERS & PIPEFITTERS | 27.48 | 11.25 |

| ROOF0030D 05/01/1995 | RATES | FRINGES |
|---|---|---|
| ROOFERS: | | |
| SHINGLE, SLATE AND TILE | 14.25 | 3.02 |
| ALL OTHER WORK | 22.47 | 10.83+P |

FOOTNOTE:
P. PAID HOLIDAY: ELECTION DAY

| SFNJ0669B 01/01/1995 | RATES | FRINGES |
|---|---|---|
| SPRINKLER FITTER | 24.55 | 6.28 |

| SHEE0027B 01/01/1994 | RATES | FRINGES |
|---|---|---|
| ʼHEET METAL WORKER | 22.94 | 3%+9.36 |

RATES OF WAGES
(Continued) F28609- 95-C-0036

| .0469D 05/01/1994 | RATES | FRINGES |
|---|---|---|
| :UCK DRIVERS | | |
| GROUP 1 | 23.55 | 7.035+A |
| GROUP 2 | 23.60 | 7.035+A |
| GROUP 3 | 23.70 | 7.035+A |
| GROUP 4 | 23.80 | 7.035+A |

TRUCK DRIVER CLASSIFICATIONS

GROUP 1: Drivers on the following type vehicles: straight dumps, flats, floats, pick-ups, container haulers, fuel, water sprinkler, road oil, stringer, bead, hot pass, bus dumpcrete, transit mixers, agitator mixer, half truck, winch truck, side-o-matic, dynamite, power, x-ray, welding, skid, jeep, station wagon, stringer, a-frame, all dual purpose trucks, truck with mechanical tailgate, asphalt distributor, batch trucks, seeding, mulching, fertilizer, air compressor trucks (in transit), parts chaser, escort, scissor, hi-lift, telescope, concrete breaker, gin pole, stone, sand, asphalt distributor and spreader, nipper, fuel trucks (drivers on fuel trucks, including handling of unit), skid truck (debris container - entire unit), concrete mobile trucks (entire unit), expediter (parts chaser), beltcrete trucks, pumpcrete trucks, line truck, reel truck, wreckers, utility trucks, tank trucks, warehousemen, warehouse partsmen, yardsmen, lift truck in warehouse, helper when required on lift truck in warehouse, warehouse clerk, partsman, material checkers, receivers shippers, binning men (materials cardex man), helper when required on broyhill coal tar epoxy truck and asphalt and bituminous distributor truck; drivers on the following type vehicles: broyhill coal tar epoxy trucks, little-ford bituminous distributor, slurry seal truck or vehicle, thiokol -ackmaster pickup (swamp cat), pickup, bucket loader dump truck and any rubber tired .ctor used in pulling and towing farm wagons and trailers of any description, similar ›e vehicles); off-site and on-site repair shop, team drivers, vacuum or vac-all trucks .tire unit).

Group 2: Drivers on straight 3-axle materials; truck and floats.

Group 3: Drivers on all euclid-type vehicles; euclids, international harvesters, wabcos, caterpillar, koehring, tractors, and wagons, dumptors, straight, bottom, rear and side dumps, carryalls and scrapers (not self-loading - loading over the top), water sprinkler, trailers, water pulls and similar types of vehicles; drivers on tractors and trailer type vehicles; flat, floats, I-beam, low beds, water sprinkler, bituminous transit mix, road oil, fuel bottom dump hopper, rear dump, office shanty, epoxy, asphalt, agitator mixer, mulching, stringer, seeding, fertilizing pole spread, bituminous distributor, water pulls (entire unit) (tractor trailer), reel trailer and similar types of vehicles.

GROUP 4: Winch Trailer Drivers

FOOTNOTE:

A. EMPLOYEES WORKING OR RECEIVING PAY FOR 80 DAYS WITHIN A YEAR RECEIVE ONE WEEK PAID VACATION (48 HOURS); 125 DAYS RECEIVE TWO WEEKS VACATION (96 HOURS); 145 DAYS RECEIVE 15 DAYS (120 HOURS); 15 YEARS SENIORITY AND 145 DAYS RECEIVE 4 WEEKS VACATION (160 HOURS).

PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, GENERAL ELECTION DAY, COLUMBUS DAY AND VETERAN'S DAY PROVIDED THE EMPLOYEE HAS BEEN ASSIGNED TO WORK OR "SHAPES" ONE DAY OF THE CALENDAR WEEK DURING WHICH THE HOLIDAY FALLS.

EMPLOYEE RECEIVES $3.00 PER HOUR PREMIUM PAY FOR HAZARDOUS WASTE WORK.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

)ERS - Receive rate prescribed for craft performing operation to which welding is ..cidental.

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)1(ii)).

F28609- 95-C-0036

MATERIAL APPROVAL SUBMITTALS

PROJECT NUMBER: PTFL–92–1044 & 1046

IOTE: Submittals required by specifications and/or drawings shall be made, regardless of whether or not they are listed below.

SUBMITTAL LEGEND

| TYPE | DESCRIPTION |
|---|---|
| A | Shop Drawings |
| B | Manufacturer's Catalog Cuts/Data |
| C | Sample |
| D | Certificate/Certification |
| E | Performance Test Reports |
| F | Sample for Testing |
| G | Notification of Availability |
| H | Delivery Tickets |
| I | Schedule's |
| J | Operation/Maintenance Manual Info. |
| K | Records |

| APPROVED | ITEM NUMBER | DESCRIPTION | TYPE REQUIRED | NUMBER REQUIRED | SPECIFICATION DRAWING REFERENCE | SUBMITTAL SUSPENSE |
|---|---|---|---|---|---|---|
| | 1 | Demolition Work Plan | K | 4 | Section 02050 Para. 1.03 A | 30* |
| | 2 | Asbestos Removal | B,D,E,J | 4,4,4,4 | Section 02080 Para. 1.11 A–I | 30* |
| | 3 | Concrete Sidewalks | K | 4 | Section 02511 Para. 1.02 A | 30* |
| | 4 | Tree, Shrubs, Ground Cover & Vines | D,K | 4,4 | Section 02950 Para. 1.02 A–B | 30* |
| | 5 | Concrete for Building Construction | D | 4 | Section 03300 Para. 1.02 A | 30* |
| | 6 | Masonry | B,C,D,E,K | 5,2,4,4.4 | Section 04200 Para. 1.02 A–E | 30* |
| | 7 | Structural Steel | A,C,D,K | 4,2,4,4 | Section 05120 Para. 1.03 A–D | 30* |
| | 8 | Steel Decking | A,B,D,K | 4,5,4,4 | Section 05300 Para. 1.02 A–D | 30* |
| | 9 | Miscellaneous Metal | A,C | 4,2 | Section 05500 Para. 1.02 A–B | 30* |
| | 10 | Finish Carpentry | C | 2 | Section 06200 Para. 1.02 A | 3 |
| | 11 | EPDM Waterproofing | D,J | 4,4 | Section 07111 Para. 1.02 A–B | |
| | 12 | Roof Insulation | B | 5 | Section 07220 Para. 1.02 A | |



ATTACHMENT J2

F28609- 95-C-0036

| APPROVED | ITEM NUMBER | DESCRIPTION | TYPE REQUIRED | NUMBER REQUIRED | SPECIFICATION DRAWING REFERENCE | SUBMITTAL SUSPENSE |
|---|---|---|---|---|---|---|
| | 13 | Firestopping | D | 4 | Section 07270 Para. 1.02 A | 30* |
| | 14 | Strip Shingles | C | 2 | Section 07311 Para. 1.02 A | 30* |
| | 15 | Caulking & Sealants | B,D | 5,4 | Section 07920 Para. 1.03 A–B | 30* |
| | 16 | Steel Doors & Frames | D | 4 | Section 08110 Para. 1.02 A | 30* |
| | 17 | Aluminum Doors & Frames | A,C,E | 4,2,4 | Section 08120 Para. 1.03 A–C | 30* |
| | 18 | Wood Doors | A,C,D | 4,2,4 | Section 08201 Para. 1.03 A–C | 30* |
| | 19 | Folding Partition | A,D,J | 4,4,4 | Section 08353 Para. 1.02 A–C | 30* |
| | 20 | Aluminum Windows | A,C,D | 4,2,4 | Section 08521 Para. 1.04 A–C | 30* |
| | 21 | Finish Hardware | B,I | 5,4 | Section 08700 Para. 1.02 A | 30* |
| | 22 | Glass & Glazing | B,C,D | 5,2,4 | Section 08810 Para. 1.03 A–C | 30* |
| | 23 | Gypsum Wallboard | D | 4 | Section 09250 Para. 1.02 A | 30* |
| | 24 | Ceramic Tile | B,C | 5,2 | Section 09310 Para. 1.02 A–B | 30* |
| | 25 | Acoustical Ceilings | B,C,D | 5,2,4 | Section 09510 Para. 1.03 A–C | 30* |
| | 26 | Resilient Flooring | B,C | 5,2 | Section 09650 Para. 1.02 A–B | 30* |
| | 27 | Carpet | B,C,D,J | 5,2,4,4 | Section 09680 Para. 1.02 A–D | 30* |
| | 28 | Painting | B,C,D,E | 5,2,4,4 | Section 09900 Para. 1.02 A–E | 30* |
| | 29 | Wallcovering | B,C | 5,2 | Section 09960 Para. 1.02 A–B | 30* |
| | 30 | Toilet Partitions | A,C | 4,2 | Section 10160 Para. 1.03 A–B | 30* |
| | 31 | Raised Floor System | A,B,D,E | 4,5,4,4 | Section 10270 Para. 1.03 A–D | 30* |
| | 32 | Exterior Signage | A,B | 4,5 | Section 10430 Para. 1.03 A–B | 30* |
| | 33 | Interior Signage | A,B,C | 4,5,2 | Section 10440 Para. 1.03 A–C | 30* |
| | 34 | Toilet Accessories | B | 5 | Section 10800 Para. 1.02 A | 30* |

.8609- 95-C-00

| PPROVED | ITEM NUMBER | DESCRIPTION | TYPE REQUIRED | NUMBER REQUIRED | SPECIFICATION DRAWING REFERENCE | SUB SUSP |
|---|---|---|---|---|---|---|
| | 35 | Kitchen Cabinets | B,C | 5,2 | Section 12390 Para. 1.03 A–B | 30* |
| | 36 | Lightproof Shades | A,C | 4,2 | Section 12520 Para. 1.03 A–B | 30* |
| | 37 | Venetian Blinds | A,C | 4,2 | Section 12540 Para. 1.03 A–B | 30* |
| | 38 | Thermal Insulation | B,C,K | 5,2,4 | Section 15250 Para. 1.04 A–C | 30* |
| | 39 | Sprinkler Systems | A,B,E,J | 4,5,4,4 | Section 15300 Para. 1.02 A–E | 30* |
| | 40 | Plumbing Fixtures | B,D,E | 5,4,4 | Section 15400 Para. 1.03 A–C | 30* |
| | 41 | Forced Hot Water Heating | A,B,E,J | 4,5,4,4 | Section 15556 Para. 1.02 A–E | 30* |
| | 42 | Warm Air Heating System | A,B,E,J | 4,5,4,4 | Section 15566 Para. 1.03 A–D | 30* |
| | 43 | Ductwork | A,B,E,I,J | 4,5,4,4,4 | Section 15895 Para. 1.04 A–H | 30* |
| | 44 | Ventilation & Exhaust Systems | A,B,D,E,J | 4,5,4,4,4 | Section 15935 Para. 1.03 A–F | 30* |
| | 45 | HVAC Controls | A,B,E,J | 4,5,4,4 | Section 15950 Para. 1.03 A–F | 30* |
| | 46 | Testing & Balancing | D,E | 4,4 | Section 15990 Para. 1.04 A–B | 30* |
| | 47 | Interior Electrical Fixtures | A,E | 4,4 | Section 16415 Para. 1.03 A–B | 30* |
| | 48 | Fire Detection System | A,B,C,E | 4,5,4,4 | Section 16721 Para. 1.04 A–F | 30* |
| | 49 | Telephone System | A | 4 | Section 16741 Para. 1.04 | 30* |

* Days after receipt of Notice to Proceed

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | |
|---|---|
| 1. CONTRACT ID CODE | J |
| PAGE OF PAGES | 1 1 |
| 2. AMENDMENT/MODIFICATION NO. | 0002 |
| 3. EFFECTIVE DATE | 95AUG18 |
| 4. REQUISITION/PURCHASE REQ. NO. | SEE BELOW |
| 5. PROJECT NO. *(If applicable)* | |
| 6. ISSUED BY CODE | ꞏ CONS/LGCK<br>ꞏ3 LANCASTER AVENUE<br>ꞏGUIRE AFB NJ 08641-1712<br>BUYER/PHONE: SAUL LEFKOWITZ 609-724-5935 |
| 7. ADMINISTERED BY *(If other than Item 6)* CODE | F28609-95-C-0036 |
| 8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)* | |
| CODE | FACILITY CODE |
| (x) 9A. AMENDMENT OF SOLICITATION NO. | X F28609-95-BA044 |
| 9B. DATED *(SEE ITEM 11)* | 95JUL28 |
| 10A. MODIFICATION OF CONTRACT/ORDER NO. | |
| 10B. DATED *(SEE ITEM 13)* | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [X] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS ON CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER *(Specify type of modification and authority)*

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

A. Wage Determination Decision Number NJ 950002, Undated and listing modification number 7, dated 08/04/1995 is hereby added.

B. Requisitions for this project are as follows:
FQ4484-5160-0100, FQ4484-5160-0200, FQ4484-5160-0300, FQ4484-5160-0400, FQ4484-5160-0500, GQ4484-5160-0600.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | |
|---|---|
| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* |
| 15B. CONTRACTOR/OFFEROR ________ *(Signature of person authorized to sign)* | 16B. UNITED STATES OF AMERICA BY ________ *(Signature of Contracting Officer)* |
| 15C. DATE SIGNED | 16C. DATE SIGNED |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

STANDARD FORM 30 (REV. 10-83) (EF)
Prescribed by GSA
FAR (48 CFR) 53.243

RATES OF WAGES F28609- 95-C-0036

Date of Decision: Undated

age Determination Decision Number NJ 950002

Department of the Air Force STATE: New Jersey COUNTY: Burlington

Construction Type: Building, Heavy & Highway

Construction Description: Building (excluding single family homes and apartments up to and including 4 stories), Heavy and Highway Construction Projects

| MODIFICATION NUMBER | PUBLICATION DATE | MODIFICATION NUMBER | PUBLICATION DATE |
|---|---|---|---|
| 0 | 02/10/1995 | 4 | 06/02/1995 |
| 1 | 03/03/1995 | 5 | 06/30/1995 |
| 2 | 04/07/1995 | 6 | 07/07/1995 |
| 3 | 05/05/1995 | 7 | 08/04/1995 |

---

CLASS OF WORK

| | RATES | FRINGES |
|---|---|---|
| ASBE0089G 07/01/1994 | | |
| ASBESTOS WORKERS | 24.115 | 11.825 |
| BOIL0028C 08/01/1995 | | |
| BOILERMAKERS | 29.26 | 1.99+41% |
| BRNJ0006A 05/01/1994 | | |
| BRICKLAYER, STONE MASON, MARBLE MASON, CEMENT MASON, PLASTERER, TILE LAYER, AND TERRAZZO WORKER | 23.96 | 10.15 |
| CARP0454B 07/01/1994 | | |
| DOCK BUILDER & PILEDRIVERMEN: | 20.50 | 14.29+A |

FOOTNOTE:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY, PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERANS DAY, PROVIDED THE EMPLOYEE WORKS ANY OF THE 3 DAYS IN THE 5-DAY WORK WEEK PRECEEDING THE HOLIDAY AND THE FIRST WORK DAY AFTER THE HOLIDAY

| | RATES | FRINGES |
|---|---|---|
| CARP1456G 07/01/1994 | | |
| DIVER | 32.77 | 16.20 |
| DIVER TENDER | 24.66 | 16.20 |
| CARP1489A 05/01/1994 | | |
| CARPENTER | 25.94 | 37% |
| MILWRIGHT | 26.19 | 37% |
| CARP2212B 05/01/1994 | | |
| SOFT FLOOR LAYER | 23.90 | 31.12% |

ATTACHMENT J-1

F28609- 95-0-0036

RATES OF WAGES
(Continued)

| | RATES | FRINGES |
|---|---|---|
| ELEC0269D 10/01/1994 | | |
| LINE CONSTRUCTION (EXCEPT RAILROAD WORK): | | |
| LINEMEN, CABLE SPLICERS, TRUCK DRIVERS, EQUIPMENT OPERATORS AND TECHNICIANS | 28.28 | 4.20+28% |
| GROUNDMEN AND WINCH OPERATORS | 22.62 | 4.20+28% |

| | RATES | FRINGES |
|---|---|---|
| ELEC0269E 10/01/1994 | | |
| ELECTRICIANS AND CABLE SPLICERS | 28.28 | 4.20+28% |

| | RATES | FRINGES |
|---|---|---|
| ELEC0999A 12/03/1994 | | |
| LINE CONSTRUCTION (RAILROAD ONLY): | | |
| LINEMEN | 16.96 | 25% |
| LINE EQUIPMENT OPERATOR | 16.20 | 25% |
| GROUNDMAN WINCH OPERATOR | 13.07 | 25% |
| GROUNDMAN | 11.06 | 25% |
| DYNAMITE MAN | 14.20 | 25% |
| STREET LIGHT MECHANIC | 12.97 | 25% |
| LINE EQUIPMENT MECHANIC | 12.90 | 25% |

| | RATES | FRINGES |
|---|---|---|
| ELEV0999A 12/03/1992 | | |
| ELEVATOR MECHANICS | 24.01 | 5.22+A |

FOOTNOTE:

A: PAID HOLIDAYS: NEW YEAR' DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY, AND CHRISTMAS DAY

PAID VACATION: EMPLOYER CONTRIBUTES 4% OF BASIC HOURLY RATE AS VACATION PAY CREDIT FOR 5 YEARS OR MORE OF SERVICE, AND 2% FOR 6 MONTHS TO 5 YEARS OF SERVICE.

| | RATES | FRINGES |
|---|---|---|
| ENGI0825B 07/01/1995 | | |
| POWER EQUIPMENT OPERATOR: | | |
| GROUP 1 | 28.62 | 12.65+A+B |
| GROUP 2 | 27.03 | 12.65+A+B |
| GROUP 3 | 25.12 | 12.65+A+B |
| GROUP 4 | 23.49 | 12.65+A+B |
| GROUP 5 | 21.78 | 12.65+A+B |
| CROUP 6 | 30.44 | 12.65+A+B |

POWER EQUIPMENT OPERATORS CLASSIFICATIONS

GROUP 1: Autograde - Combination Subgrader; base metal spreader and 7 base trimmer (CMI and similar types); autograde placer, trimmer, spreader combination (CMI and similar types); autograde slipform paver (CMI and similar types); backhoe; central power plants (all types); concrete paving machines; cranes (all types, including overhead and straddle traveling type); cranes; gantry; derricks (land or floating); drillmaster, quarrymaster (down the hole drill) rotary drill; self propelled hydraulic drill; self-powered drill; dragline; elevator graders; front end loaders (5 yds and over); gradalls; grader; raygo; locomotive (large); mucking machines; pavement and concrete breaker, i.e., superhammer and hoe ram; pile driver, length of boom including length of leads, shall determine premium rate applicable; roadway surface grinder; scooper (loader and shovel); shovels; tree chopper with boom; trench machines.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

GROUP 2: "A" frame; backhoe (combination); boom attachment on loaders (rate based on ize of bucket) not applicable to pipehook, boring and drilling machines; brush chopper; shredder and tree shredder; tree shearer; cableways; carryalls; concrete pump; concrete pumping system; pumpcrete and similar types; conveyors, 125 ft. and over; drill doctor including dust collector (maintenance); front end loaders (2 yds. but less than 5 yds.); graders (finisher); groove cutting machine (ride on type); header planner; hoists (all types hoists, shall also include steam, gas, diesel, electric, air hydraulic, single and double drum, concrete brick shaft caisson, snorkel roof, and/or any other similar type hoisting machines, portable or stationary, except Chicago boom type); hoist (Chicago boom type); hydraulic cranes, 10 tons and under; hydro-axle; jacks screw air hydraulic power operated unit or console type (not hand jack or pile load test type); log skidder, pans, pavers (all concrete); pumpcrete machines; squeezecrete and concrete pumping (regardless of size); scrapers; side booms' straddle carrier; ross and similar types; winch truck (hoisting).

GROUP 3: Asphalt curbing machine; asphalt plant engineer; asphalt spreader; autograde tube finisher and texturing machine (CMI and similar types); autograde curercrete machine (CMI and similar types); autograde curb trimmer and sidewalk; shoulder; slipform (CMI and similar types); bar bending machines (power); batchers; batching plant and crusher on side; belt conveyer systems; boom type skimmer machines; bridge deck finisher; bulldozer (all); car dumpers (railroad); compressor and blower type units (used independently or mounted on dual purposes trucks, on job site or in conjunction with job site, in loading and unloading of concrete, cement, fly ash, instancrete, or similar type materials); compressor (2 or 3) (battery); concrete finishing machines; concrete saws and cutters (ride on type); concrete spreaders; hetzel, rexomatic and similar types; concrete vibrators; conveyors, under 125 ft.; crushing machines; ditching machine, small (ditchwitch or similar type); dope pots (mechanical with or without pump); dumpsters elevator; fireman; forklifts (economobile, lull and similar types of equipment); front end loader (1 yd and over but less than 2 yds); generators (2 or 3) in battery; giraffe grinders; graders and motor patrols; gunnite machines (excluding nozzle); hammer, vibratory (in conjunction with generator); hoist (roof, tugger, aerial platform hoist and house cars); hoppers; hopper doors (power operated); ladders (motorized); laddervator; locomotive, dinky type; maintenance; utility man; mechanics; mixers (except paving mixers); motor patrols and graders; pavement breakers, small; self-propelled ride on type (also maintaining compressor or hydraulic unit); pavement breaker, truck mounted; pipe bending machine (power); pitch pump; plaster pump (regardless of size); post hole digger (post pounder and auger); rod bending machines (power); roller, black top; scales, power; seaman pulverizing mixer; shoulder widener; silos; skimmer machines (boom type); steel cutting machine, services and maintaining tractors; tug captain; vibrating plants (used in conjunction with unloading); welder and repair mechanics.

GROUP 4: Brooms and sweepers, chippers, compressor (single), concrete spreaders (small type), conveyor loaders (not including elevator graders), engines, large diesel (1620 H.P.) and staging pump, farm tractors; fertilizing equipment (operation and maintenance); fine grade machine (small type); form line graders (small type); front loader (under 1 yd.); generator (single); grease, gas, fuel and oil supply trucks; heaters (nelson or other type including propane, natural gas or flow-type units); lights; portable generating light plants; mixers, concrete, small; mulching equipment (operation and maintenance); pumps (4 inch suction and over including submersible pumps); pumps (2 or

RATES OF WAGES
(Continued)

F28609F 95-C-0038

less than 4 inch suction and over including submersible pumps); pumps (diesel engine and hydraulic) immaterial of power; road finishing machines (small types); rollers; grade, fill or stone base; seeding equipment (operations and maintenance of); sprinkler and water pump trucks; steam jennies and boilers; stone spreader; tamping machines, vibrating ride-on; temporary heating plant (nelson or other type, including propane, natural gas or flow type units); water and sprinkler trucks; welding machines (gas, diesel and/or electric converters of any type, single, two or three in a battery); welding systems, multiple (rectifier transformer type); wellpoint system.

GROUP 5: Oiler.

GROUP 6: Helicopter pilot.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY; PLUS WASHINGTON'S BIRTHDAY AND VETERANS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| ENGI0825C 07/01/1994 | RATES | FRINGES |
|---|---|---|
| POWER EQUIPMENT OPERATOR: | | |
| TANK ERECTION: | | |
| GROUP 1 | 29.96 | 12.65+A+B |
| GROUP 2 | 29.12 | 12.65+A+B |
| GROUP 3 | 31.10 | 12.65+A+B |
| GROUP 4 | 27.03 | 12.65+A+B |
| GROUP 5 | 21.82 | 12.65+A+B |

TANK ERECTION CLASSIFICATIONS

GROUP 1: Operating Engineers--on all cranes, derricks, etc., with booms including jib 140 ft or more above the ground.

GROUP 2: Operating Engineers--on all equipment, including cranes, derricks, etc., with booms including jib, less than 140 ft above the ground.

GROUP 3: Helicopters--Pilot.

GROUP 4: Air compressors, welding machines and generators (gas, diesel, or electrical driven equipment and sources of power from a permanent plant, i.e., steam, compressed air, hydraulic or other power, for the operating of any machine or automatic tools used in the erection, alteration, repair and dismantling of tanks and any and all "dual purpose" trucks used on the construction job site.

GROUP 5: Oiler.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY; PLUS WASHINGTON'S BIRTHDAY AND VETERANS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| ENGI0825D 07/01/1995 | RATES | FRINGES |
|---|---|---|
| POWER EQUIPMENT OPERATOR: | | |
| STEEL ERECTION: | | |
| GROUP 1 | 31.39 | 12.65+A+B |
| GROUP 2 | 30.48 | 12.65+A+B |
| GROUP 3 | 28.19 | 12.65+A+B |

RATES OF WAGES
(Continued) F28609= 95-C-0036

| | | |
|---|---|---|
| GROUP 4 | 25.53 | 12.65+A+B |
| GROUP 5 | 24.00 | 12.65+A+B |
| GROUP 6 | 22.24 | 12.65+A+B |
| GROUP 7 | 32.75 | 12.65+A+B |

STEEL ERECTION CLASSIFICATIONS

GROUP 1: Cranes - (all cranes, land or floating with booms including jib 140 ft. and over, above ground); derricks - (all derricks, land or floating with boom including jib 140 ft. and over, above ground).

GROUP 2: Cranes - (all cranes, land or floating with booms including jib less than 140 ft. above ground); derricks (all derricks, land or floating with booms including jib, less than 140 ft. above ground).

GROUP 3: "A" frame; cherry pickers 10 ton and under; hoists; all types hoists shall also include steam, gas, diesel, electric, air hydraulic, single and double drum, concrete, brick shaft caisson, or any other similar type hoisting machines, portable or stationary, except Chicago boom type; jacks-screw air hydraulic power operated unit console type (not hand jack or pile load test type) side booms.

GROUP 4: Aerial platform used hoist; compressor, 2 or 3 in battery; elevators or house cars; conveyors and tugger hoists; fireman; forklift; generators, 2 or 3 maintenance-utility man; rod bending machine (power); welding machines--(gas or electric, 2 or 3 in battery, including diesels); captain power boats; tug master power boats.

GROUP 5: Compressor, single, welding machine, single, gas, electric, converters of any type, diesel; welding system multiple (rectifier transformer type); generator, single.

GROUP 6: Straddle carrier.

GROUP 7: Helicopter pilot.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY AND VETERANS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| ENGI0825E 07/01/1994 | RATES | FRINGES |
|---|---|---|
| POWER EQUIPMENT OPERATOR: | | |
| OILOSTATIC MAINLINES AND TRANSPORTATION PIPELINES: | | |
| GROUP 1 | 28.10 | 12.65+A+B |
| GROUP 2 | 26.45 | 12.65+A+B |
| GROUP 3 | 24.31 | 12.65+A+B |
| GROUP 4 | 22.81 | 12.65+A+B |
| GROUP 5 | 21.09 | 12.65+A+B |
| GROUP 6 | 30.03 | 12.65+A+B |

OILOSTATIC MAINLINES AND TRANSPORTATION PIPELINES CLASSIFICATIONS

GROUP 1: Backhoe; cranes (all types); draglines; front-end loaders (5 yds and over); gradalls; scooper (loader and shovel); koehring and trench machines.

GROUP 2: "A" frame; backhoe (combination hoe loader); boring and drilling machines; ditching machine, small (ditchwitch or similar type); fork lifts; front end loaders (2 yds. and over but less than 5 yds.); graders, finish (fine); hydraulic cranes, 10 tons and under (over 10 tons - crane rate applies); side booms; and winch trucks (hoisting).

GROUP 3: Backfiller; brooms and sweepers; bulldozers; compressors (2 or 3 in battery); front-end loaders (under 2 yds.); generators; giraffe grinders; graders and motor patrols; mechanic; pipe bending machine (power); tractors; water and sprinkler trucks, welder and repair mechanic.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

GROUP 4: Compressor (single); dope pots (mechanical with or without pump); dust collectors; farm tractors; pumps (4 inch suction and over); pumps (2 or less than 4 inch suction); pumps, diesel engine and hydraulic (immaterial of power); welding machines; gas or electric converters of any type, single; welding machines, gas or electric converters of any type, 2 or 3 in battery; multiple welders; wellpoint systems (including installation and maintenance).

GROUP 5: Oiler, grease, gas, fuel and supply trucks and tire repair and maintenance.

GROUP 6: Helicopter - pilot.

FOOTNOTES:

A. PAID HOLIDAYS: NEW YEAR'S DAY; WASHINGTON'S BIRTHDAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; VETERAN'S DAY; THANKSGIVING DAY; AND CHRISTMAS DAY.

B. EMPLOYEE RECEIVES 20% PREMIUM PAY FOR HAZARDOUS WASTE WORK.

| IRON0068A 07/01/1995 | RATES | FRINGES |
|---|---|---|
| IRONWORKERS: | | |
| STRUCTURAL, ORNAMENTAL | 24.35 | 16.10 |
| REINFORCING (CONCRETE RODS) | 23.35 | 16.10 |

| LABO0172A 03/01/1995 | RATES | FRINGES |
|---|---|---|
| LABORER (HEAVY & HIGHWAY CONSTRUCTION) | | |
| GROUP 1 | 19.70 | 8.05+U |
| GROUP 2 | 19.90 | 8.05+U |
| GROUP 3 | 20.20 | 8.05+U |
| GROUP 4 | 20.40 | 8.05+U |
| GROUP 5 | 20.65 | 8.05+U |
| GROUP 6 | 24.20 | 8.05+U |
| GROUP 7 | 22.70 | 8.05+U |

LABORER (HEAVY AND HIGHWAY CONSTRUCTION) CLASSIFICATIONS

GROUP 1: Common laborers, landscape laborers, railroad track laborers, flagmen, salamander tenders, pitman, dumpman, waterproofing laborers, rakers and tampers on cold patch work, and wrapping and coating of all pipes.

GROUP 2: Powder carrier, magazine tender, wagon drill operator helpers, drill master helper, and signalman.

GROUP 3: Sewer pipe, laser men, conduit and duct line layer, power tool operator, jack hammer, chipping hammer, pavement breaker, power buggy, concrete cutter, asphalt cutter, sheet hammer and tree cutter operators, sandblasting cutting, burning and such other power tools used to perform work usually done manually by laborers.

GROUP 4: Wagon drill operator, timberman and drill master.

GROUP 5: Finisher, manhole, catch basin or inlet builder, form setter, rammer, paver, gunnite nozzleman and stonecutter.

GROUP 6: Blaster.

GROUP 7: Hazardous waste laborer.

FOOTNOTES:

U. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERAN'S DAY, PROVIDED THE EMPLOYEE WORKS ON 3 DAYS FOR THE SAME EMPLOYER WITHIN A PERIOD OF TEN WORKING DAYS CONSISTING OF FIVE WORKING DAYS BEFORE AND FIVE WORKING DAYS AFTER THE DAY UPON WHICH THE HOLIDAY FALLS OR IS OBSERVED.

RATES OF WAGES
(Continued) F28609- 95-C-0036

| LAB00172B 03/01/1995 | RATES | FRINGES |
|---|---|---|
| LABORER: | | |
| FREE AIR TUNNEL: | | |
| GROUP 1 | 23.20 | 8.05+U |
| GROUP 2 | 20.75 | 8.05+U |
| GROUP 3 | 20.60 | 8.05+U |
| GROUP 4 | 20.10 | 8.05+U |

FREE AIR TUNNEL CLASSIFICATION

GROUP 1: Blasterers

GROUP 2: Skilled men (including miners, drill runners, iron men, maintenance men, conveyor men, safety miners, riggers, block layers, cement finishers, rod men, caulkers, powder carriers, all other skilled men).

GROUP 3: Semi-skilled men (including miner's helpers, chuck tenders, track men, nippers, brakemen, derail men, cable men, hose men, grout men, gravel men, form men, bell or signal men (top or bottom), form workers and movers, concrete workers, shaft men, tunnel laborers, caulkers' helpers, all other semi-skilled).

GROUP 4: All others (including powder watchmen, change house attendance, top laborers).

FOOTNOTE:

U. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERAN'S DAY, PROVIDED THE EMPLOYEE WORKS ON 3 DAYS FOR THE SAME EMPLOYER WITHIN A PERIOD OF TEN WORKING DAYS CONSISTING OF FIVE WORKING DAYS BEFORE AND FIVE WORKING DAYS AFTER THE DAY UPON WHICH THE HOLIDAY FALLS OR IS OBSERVED.

| LAB00172C 03/01/1995 | RATES | FRINGES |
|---|---|---|
| LABORERS - ASPHALT CONSTRUCTION | | |
| STREET: | | |
| HEAD RAKERS | 20.50 | 8.05+D |
| RAKERS & SCREED MEN | 20.35 | 8.05+D |
| TAMPERS, SMOOTHERS, KETTLEMEN, PAINTERS, SHOVELERS & ROLLER BOYS | 20.10 | 8.05+D |
| PLANT: | | |
| SCALE MIXERS & BURNER MEN | 20.35 | 8.05+D |
| FEEDERS AND DUST MEN | 20.10 | 8.05+D |

FOOTNOTE:

D. PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, PRESIDENTIAL ELECTION DAY AND VETERAN'S DAY, PROVIDED THE EMPLOYEE WORKS ON 3 DAYS FOR THE SAME EMPLOYER WITHIN A PERIOD OF TEN WORKING DAYS CONSISTING OF FIVE WORKING DAYS BEFORE AND FIVE WORKING DAYS AFTER THE DAY UPON WHICH THE HOLIDAY FALLS OR IS OBSERVED.

| LAB00369A 05/01/1993 | RATES | FRINGES |
|---|---|---|
| LABORERS (BUILDING CONSTRUCTION) | 16.30 | 9.47 |

| PAIN1095B 12/01/1993 | RATES | FRINGES |
|---|---|---|
| GLAZIERS | 9.41 | .87 |

F28609- 95-C-0036

RATES OF WAGES
(Continued)

| | RATES | FRINGES |
|---|---|---|
| PAIN1171A 06/01/1994 | | |
| PAINTERS | | |
| COMMERCIAL BRUSH, ROLLER AND PAPERHANGING | 17.20 | 5.00 |
| COMMERCIAL SPRAY OR DIPPING, OR THE USE OF ANY SPECIAL MATERIAL, BRUSHING OR ROLLING ON STEEL TANKS, OR WORKING SWING OR CHAIR | 17.95 | 5.00 |
| SANDBLASTING OR POWER TOOLS; SPRAYING OR THE USE OF ANY SPECIAL MATERIAL ON STEEL OR TANKS | 18.70 | 5.00 |

| | RATES | FRINGES |
|---|---|---|
| PAIN1976A 02/01/1995 | | |
| DRYWALL TAPERS & FINISHERS | 24.25 | 11.16 |

| | RATES | FRINGES |
|---|---|---|
| PLUM0009I 03/01/1995 | | |
| AIR CONDITIONING AND REFRIGERATION MECHANICS | 20.10 | 6.16 |

SCOPE OF WORK:

Installation of commercial, industrial, residential air conditioning and refrigeration equipment whose combined tonnage does not exceed fifteen (15) tons. Installation of water-cooled air-conditioning that does not exceed 10 tons (includes the piping of component system and the erection of the water tower). Installation of air-cooled air conditioning that does not exceed 15 tons. Installation of commercial, industrial and residential air conditioning equipment of the "packaged-unitary" rooftop type, the combined tonnage of which does not exceed 35 tons. Packaged-Unitary Air Conditioning and Refrigeration Institute (ARI) as follows: "A unitary air conditioner consists of one or more factory made assemblies which normally include an evaporator or cooling coil, an air moving device, a compressor and condenser combination, and may include a heating function as well." Any and all related piping to the above installation will be done under the appropriate trade jurisdiction.

| | RATES | FRINGES |
|---|---|---|
| PLUM0009J 07/01/1994 | | |
| PLUMBERS & PIPEFITTERS | 27.48 | 11.25 |

| | RATES | FRINGES |
|---|---|---|
| ROOF0030D 05/01/1995 | | |
| ROOFERS: | | |
| SHINGLE, SLATE AND TILE | 14.25 | 3.02 |
| ALL OTHER WORK | 22.47 | 10.83+P |

FOOTNOTE:
P. PAID HOLIDAY: ELECTION DAY

| | RATES | FRINGES |
|---|---|---|
| SFNJ0669B 01/01/1995 | | |
| SPRINKLER FITTER | 24.55 | 6.28 |

| | RATES | FRINGES |
|---|---|---|
| SHEE0027B 01/01/1994 | | |
| SHEET METAL WORKER | 22.94 | 3%+9.36 |

RATES OF WAGES
(Continued) F28609- 95-C-0036

| M0469D 05/01/1994 | RATES | FRINGES |
|---|---|---|
| TRUCK DRIVERS | | |
| GROUP 1 | 23.55 | 7.035+A |
| GROUP 2 | 23.60 | 7.035+A |
| GROUP 3 | 23.70 | 7.035+A |
| GROUP 4 | 23.80 | 7.035+A |

TRUCK DRIVER CLASSIFICATIONS

GROUP 1: Drivers on the following type vehicles: straight dumps, flats, floats, pick-ups, container haulers, fuel, water sprinkler, road oil, stringer, bead, hot pass, bus dumpcrete, transit mixers, agitator mixer, half truck, winch truck, side-o-matic, dynamite, power, x-ray, welding, skid, jeep, station wagon, stringer, a-frame, all dual purpose trucks, truck with mechanical tailgate, asphalt distributor, batch trucks, seeding, mulching, fertilizer, air compressor trucks (in transit), parts chaser, escort, scissor, hi-lift, telescope, concrete breaker, gin pole, stone, sand, asphalt distributor and spreader, nipper, fuel trucks (drivers on fuel trucks, including handling of unit), skid truck (debris container - entire unit), concrete mobile trucks (entire unit), expediter (parts chaser), beltcrete trucks, pumpcrete trucks, line truck, reel truck, wreckers, utility trucks, tank trucks, warehousemen, warehouse partsmen, yardsmen, lift truck in warehouse, helper when required on lift truck in warehouse, warehouse clerk, partsman, material checkers, receivers shippers, binning men (materials cardex man), helper when required on broyhill coal tar epoxy truck and asphalt and bituminous distributor truck; drivers on the following type vehicles: broyhill coal tar epoxy trucks, little-ford bituminous distributor, slurry seal truck or vehicle, thiokol trackmaster pickup (swamp cat), pickup, bucket loader dump truck and any rubber tired tractor used in pulling and towing farm wagons and trailers of any description, similar type vehicles); off-site and on-site repair shop, team drivers, vacuum or vac-all trucks (entire unit).

Group 2: Drivers on straight 3-axle materials; truck and floats.

Group 3: Drivers on all euclid-type vehicles; euclids, international harvesters, wabcos, caterpillar, koehring, tractors, and wagons, dumptors, straight, bottom, rear and side dumps, carryalls and scrapers (not self-loading - loading over the top), water sprinkler, trailers, water pulls and similar types of vehicles; drivers on tractors and trailer type vehicles; flat, floats, I-beam, low beds, water sprinkler, bituminous transit mix, road oil, fuel bottom dump hopper, rear dump, office shanty, epoxy, asphalt, agitator mixer, mulching, stringer, seeding, fertilizing pole spread, bituminous distributor, water pulls (entire unit) (tractor trailer), reel trailer and similar types of vehicles.

GROUP 4: Winch Trailer Drivers

FOOTNOTE:

A. EMPLOYEES WORKING OR RECEIVING PAY FOR 80 DAYS WITHIN A YEAR RECEIVE ONE WEEK PAID VACATION (48 HOURS); 125 DAYS RECEIVE TWO WEEKS VACATION (96 HOURS); 145 DAYS RECEIVE 15 DAYS (120 HOURS); 15 YEARS SENIORITY AND 145 DAYS RECEIVE 4 WEEKS VACATION (160 HOURS).

PAID HOLIDAYS: NEW YEAR'S DAY; MEMORIAL DAY; INDEPENDENCE DAY; LABOR DAY; THANKSGIVING DAY; CHRISTMAS DAY PLUS WASHINGTON'S BIRTHDAY, GENERAL ELECTION DAY, COLUMBUS DAY AND VETERAN'S DAY PROVIDED THE EMPLOYEE HAS BEEN ASSIGNED TO WORK OR "SHAPES" ONE DAY OF THE CALENDAR WEEK DURING WHICH THE HOLIDAY FALLS.

EMPLOYEE RECEIVES $3.00 PER HOUR PREMIUM PAY FOR HAZARDOUS WASTE WORK.

F28609- 95-C-0036

RATES OF WAGES
(Continued)

ERS - Receive rate prescribed for craft performing operation to which welding is ...idental.

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)1(ii)).

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J | PAGE 1 OF 3 PAGES

2. AMENDMENT/MODIFICATION NO.: 0001
3. EFFECTIVE DATE: 95AUG14
4. REQUISITION/PURCHASE REQ. NO.: SEE BELOW F2
5. PROJECT NO. (If applicable)

6. ISSUED BY — CODE

CONTRACTING SQUADRON
3303 LANCASTER AVENUE
MCGUIRE AFB NJ 08641-1712
BUYER/PHONE: Saul Lefkowitz, 609-724-5935

7. ADMINISTERED BY (If other than Item 6) — CODE

F28609- 95-C-0036

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

(x) 9A. AMENDMENT OF SOLICITATION NO.: X F28609-95-BA044

9B. DATED (SEE ITEM 11): 28 JUL 95

10A. MODIFICATION OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

CODE | FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [X] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS ON CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(x) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Solicitation F28609-95-BA044, Renovations to Bldgs 2401, 2402 and 2403 at McGuire AFBNJ are amended as follows:

A. Add the following to Section F, Deliveries or Performance:

| | | | |
|---|---|---|---|
| F-25. | 52.212-11 | VARIATION IN ESTIMATED QUANTITIES (IAW FAR 12.403(c)) | APR 1984 |

B. Add the following to Section H, Special Contract Requirements:

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)

15B. CONTRACTOR/OFFEROR

(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA

BY ______ (Signature of Contracting Officer)

16C. DATE SIGNED

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

STANDARD FORM 30 (REV. 10-83) (EF)
Prescribed by GSA
FAR (48 CFR) 53.243

AMC H-1 5352.232-1000 PAYMENT FOR MATERIALS STORED ON SITE MAY 1991
(IAW AMCFARS 5352.111-100(a)(1)

(a) This clause implements, but does not replace, FAR 52.232-5, Payments Under Fixed-Price Construction Contracts, with regard to material payments.

(b) Consideration for payment under this contract for materials stored on site is subject to the following conditions:

(1) The contractor shall furnish the contracting officer a list of the major high-cost items to be incorporated into the contract and for which payment, prior to installation, will be requested. Those items approved by the contracting officer will be entered on the AF Form 3064, Contract Progress Schedule, as a percentage factor, or factors if items are listed individually.

(2) Payment is limited to major high-cost items. A major high-cost item is defined as a single item of material with a unit price of $250.00. Such costs as sales tax, freight, handling, pallets, etc., are excluded.

C. Change subparagraph 3 of Clause I-100 in Section I, Contract Clauses, page 22, to read as follows: "not later than 180 calendar days for the Basic Requirement (Bldg 2401). If Optional Requirement No. 1 (Bldg 2403) is awarded, 60 calendar iays will be added to the 180 calendar days. If Optional Requirement No. 2 (Bldg 402) is awarded, 60 calendar days will be added to the 180 calendar days. If the ɜasic Requirement and Optional Requirements No. 1, 2 and 3 are awarded, the performance period will be 300 calendar days. Note: No additional days performance will be added for Optional Requirement No. 3 as all work associated with that Optional Requirement has been included in the above stated performance period. Construction on the Basic Requirement and Optional Requirements, if awarded, will occur concurrently.

D. Add the following to Section I, Contract Clauses:

I-144 52.236-1 PERFORMANCE OF WORK BY THE CONTRACTOR APR 1984
(IAW FAR 36.501(b))

For the purposes of this clause the blank(s) are completed as follows:
(10%)

I-458 52.236-14 AVAILABILITY AND USE OF UTILITY SERVICES APR 1984
(IAW FAR 36.514)

I-460 52.236-16 QUANTITY SURVEYS APR 1984
(IAW FAR 36.516)

IA-463 252.236-7001 CONTRACT DRAWINGS, MAPS, AND SPECIFICATIONS APR 1984
(IAW DFARS 236.570(a)(2))

For the purposes of this clause the blank(s) are completed as follows:
Five (5)

PART IV - REPRESENTATIONS AND INSTRUCTIONS
SECTION M
EVALUATION FACTORS FOR AWARD

F28609-95-C-0036

900 EVALUATION OF OPTIONAL REQUIREMENT LINE ITEMS

a. Prior to the opening of bids, the Government will determine the amounts of funds available for the total project (CLINs 0001 - 0016).

b. Bids will be evaluated by first considering the amount bid for CLINs 001AA, 0006AA and 0011AA. All bids which exceed the cost limitation of $300,000 shall not receive further consideration for award except as may be provided by DOD FAR Supplement 252-236-7006.

c. The Contracting Officer shall evaluate all remaining bids on the basis of the aggregate of the same basic and optional requirements.

(1) If adding the aggregate of the Basic Requirement (CLINs 0001 - 0005AH), the Optional Requirement No. 1 (CLINs 0006 - 0010AH) would make the award exceed the available funds for all offerors, the Contracting Officer shall skip that optional requirement and go to Optional Requirement No. 2 (CLINs 0011 - 0015AH; and

(2) Add Optional Requirement No. 2 (CLINs 0011 - 0015AH) if an award may be made that includes that optional requirement and is within the available funds. At this point, if any offer is (a) still within the funds available, and (b) includes the Basic Requirement and Optional Requirements No. 1 and 2, the Contracting Officer shall then;

(3) Add Optional Requirement No. 3 (CLIN 0016) if an award may be made that is (a) within the available funds, and (b) the prorated amounts, when added to CLINs 0001AA, 0006AA, and 0011AA, do not cause any one of the three CLINs to exceed the individual cost limitation of $300,000. The Government does not intend to evaluate or award Optional Requirement No. 3 unless there is at least one offer that is (a) still within the funds available, (b) includes the Basic Requirement and Optional Requirements No. 1 and 2, and (c) does not exceed the stated cost limitations.

(3) *Example:

The amount available for the total project (all CLINs) is $100,000:

| | | | |
|---|---|---|---|
| Aggregate for Basic Requirement | $85,000 | $80,000 | |
| Aggregate for Optional Requirement No. 1 | $10,000 | $16,000 | |
| Aggregate for Optional Requirement No. 2 | ~~$ 3,000~~ | ~~$ 9,000~~ | (Skipped) |
| Aggregate for Optional Requirement No. 3 | ~~$ 5,000~~ | ~~$ 7,000~~ | (Skipped) |
| Aggregate for Optional Requirement No. 4 | $4,000 | $4,000 | |
| Evaluated Totals | $99,000 | $100,000 | |

*Example is based on a bid schedule comprised of a basic requirement plus 4 optional requirements with the last Optional Requirement simulating CLIN 0016 in this solicitation..

F28609- 95-C-0036

The amount of offeror A's bid for the Basic Requirement for purposes of valuation would be $99,000. The amount of offeror B's bid for the Basic Requirement for purposes of evaluation would be $100,000. This evaluation includes the Basic Requirement plus the first and fourth Optional Requirements. The second and third Optional Requirements were skipped because each of them would cause the bids for the Basic Requirement to exceed $100,000. In this example, Optional Requirement No. 4 would not be considered because an award could not be made that would include the Basic Requirement and Optional Requirements No. 1, 2 and 3.

(d) The low offeror for purposes of award shall be the offeror that --

(1) Is otherwise eligible for award; and

(2) Offers the lowest amount for the Basic Requirement and the Optional Requirements No. 1, 2, and 3, evaluated as stated above. In the example above, Offer A is the low evaluated offeror.

(e) The Contracting Officer will use the list of priorities in the bid schedule only to determine the low offeror. After determining the low offeror, an award may be made on any combination of items if --

(1) It is in the best interest of the Government;

(2) Funds are available at the time of award; and

(3) The low offeror's price for the combination to be awarded is less than the price offered by any other responsive, responsible offeror.

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT
F28609-95-BA044 0001

PAGE 3 OF 3 PAGES
F28609-95-C-0036

. Add the attached page 41A of 46 to Section K, Representations, Certifications and Other Statements of Offerors or Quoters marked "Accompanying Amendment F28609-95-BA044 0001."

F. Delete the following from Section L, Instructions, Conditions and Notices to Offerors or Quoters:

| | | | |
|---|---|---|---|
| L-260 | 252.228-7004 | BONDS OR OTHER SECURITY (IAW DFARS 228.170) | DEC 1991 |

G. Add the following to Section L, Instructions, Conditions and Notices to offerors or Quoters:

| | | | |
|---|---|---|---|
| L-266 | 252.236-7008 | CONTRACT PRICES--BIDDING SCHEDULE (IAW DFARS 236.570(b)(6)) | DEC 1991 |

H. Delete Section M, Evaluation Factors for Award, pages 45 and 46, and add the attached Section M, Evaluation Factors for Award, pages 45 and 46, marked "Accompanying Amendment F28609-95-BA044 0001."

I. There are no further changes at this time.

REQUISITIONS FOR THIS PROJECT ARE AS FOLLOWS:

FQ4484-5160-0100 FQ4484-5160-0200, FQ4484-5160-0300, F14484-5160-0400, FQ4484-5160-0500, FQ4484-5160-0600

-79C. 52.219-19 **SMALL BUSINESS CONCERN REPRESENTATION FOR THE SMALL BUSINESS COMPETITIVENESS DEMONSTRATION PROGRAM** JUL 1991
(IAW FAR 19.1007(a))

(a) Definition.

"Emerging small business", as used in this solicitation means a small business concern whose size is no greater than 50 percent of the numerical size standard applicable to the standard industrial classification code assigned to a contracting opportunity.

(b) Complete only if Offeror has certified itself under the provision at 52.219-1 as a small business concern under the size standards of this solicitation.

The Offeror represents and certifies as part of its offer that it ( ) is, ( ) is not an emerging small business.

(c) (Complete only if the Offeror is a small business or an emerging small business, indicating range.)

Offeror's number of employees for the past 12 months (check this column if size standard stated in solicitation is expressed in terms of number of employees) or Offeror's average annual gross revenue for the last three fiscal years (check this column if size standard stated in solicitation is expressed in terms of annual receipts). (Check one of the following.)

| No. of Employees | Avg. Annual Gross Revenues |
|---|---|
| _____ 50 or fewer | _____ $1 million or less |
| _____ 51 - 100 | _____ $1,000,001 - $2 million |
| _____ 101 - 250 | _____ $2,000,001 - $3.5 million |
| _____ 251 - 500 | _____ $3,500,001 - $5 million |
| _____ 501 - 750 | _____ $5,000,001 - $10 million |
| _____ 751 - 1,000 | _____ $10,000,001 - $17 million |
| _____ Over 1,000 | _____ Over $17 million |

JUL-19-97 01:52 From:

PERFORMANCE BOND (See instructions on reverse)

Date of contract: OCTOBER 11, 1995

9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

**PRINCIPAL (Legal name and business address)**

CASTLE ABATEMENT CORP.
60 HECKEL STREET
BELLEVILLE, NJ 07109

**TYPE OF ORGANIZATION ("X" one)**

☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

**STATE OF INCORPORATION:** NEW YORK

**SURETY(IES) (Name(s) and business address(es))**

UNITED PACIFIC INSURANCE COMPANY
520 EAGLEVIEW BOULEVARD
EXTON, PA 19341-0636

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 3 | 152 | 174 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 09/21/95 | 28609-95-C-0036 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal —

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. CASTLE ABATEMENT CORP. | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | UNITED PACIFIC INSURANCE COMPANY 520 EAGLEVIEW BLVD., EXTON, PA 19341 | STATE OF INC. PA | LIABILITY LIMIT $5,812,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. RICHARD A. LEVERONI ATTORNEY-IN-FACT | 2. | | |

NSN 7540-01-152-8060 Previous edition not usable | EXPIRATION DATE 12-31-92 | 25-107 | STANDARD FORM 25 (REV. 1-90) Prescribed by GSA — FAR (48 CFR) 53.228(b)

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | ADDRESS | | | | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| BOND PREMIUM ▶ | RATE PER THOUSAND | TOTAL |
|---|---|---|
| | $ 25/Slide | $33,391.00 |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form insert only the letter identification the sureties.

(b) Where individual sureties are involved, a complet Affidavit of Individual Surety (Standard Form 28), for ea individual surety shall accompany the bond. The Government m require the surety to furnish additional substantiating informati concerning its financial capability.

4. Corporations executing the bond shall affix their corpor seals. Individuals shall execute the bond opposite the wc "Corporate Seal", and shall affix an adhesive seal if executed Maine, New Hampshire, or any other jurisdiction requiring adhes seals.

5. Type the name and title of each person signing this bond the space provided.

STANDARD FORM 25 (REV. 1-90) B

JUL-19-97 01:53 From:

**PAYMENT BOND**
(See instructions on reverse)

Date of contract: OCTOBER 11, 1995

9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

PRINCIPAL (Legal name and business address)

CASTLE ABATEMENT CORP.
60 HECKEL STREET
BELLEVILLE, NJ 07109

TYPE OF ORGANIZATION ("X" one)

☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

STATE OF INCORPORATION: NEW YORK

SURETY(IES) (Name(s) and business address(es))

UNITED PACIFIC INSURANCE COMPANY
520 EAGLEVIEW BOULEVARD
EXTON, PA 19341-0636

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 1 | 576 | 087 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 09/21/95 | 28609-95-C-0036 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

PRINCIPAL

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. CASTLE ABATEMENT CORP. | 2. | 3. | |

INDIVIDUAL SURETY(IES)

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

CORPORATE SURETY(IES)

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | UNITED PACIFIC INSURANCE COMPANY 520 EAGLEVIEW BLVD., EXTON, PA | STATE OF INC. PA | LIABILITY LIMIT $ 5,812,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. RICHARD A. LEVERONI ATTORNEY-IN-FACT | 2. | | |

NSN 7540-01-152-8061
Previous edition not usable

EXPIRATION DATE: 12-31-92

25-205

STANDARD FORM 25-A (REV 1-
Prescribed by GSA — FAR (48 CFR) 53.228

## CORPORATE SURETY(IES) (Continued)

| | | | | | | |
|---|---|---|---|---|---|---|
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and naterial, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal n the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a epresentative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of he firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on he Department of the Treasury's list of the approved sureties and nust act within the limitation listed therein. Where more than one orporate surety is involved, their names and addresses shall ppear in the spaces (Surety A, Surety B, etc.), headed CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall excute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

## TAKEOVER AGREEMENT

THIS AGREEMENT is made and entered into this 5th day of August, 1997, between the United States of America, United States Air Force, acting by and through the Contracting Officer, hereinafter referred to as the "GOVERNMENT", and United Pacific Insurance Company, hereinafter referred to as the "SURETY" and is that:

WHEREAS, on or about September 21, 1995, GOVERNMENT entered into Contract Number F28609-95-C-0036 with Castle Abatement Corporation, hereinafter referred to as "CONTRACTOR", in the amount of $3,152,174.00 for construction of the project described as Renovation of Buildings 2401, 2402 and 2403, McGuire AFB, New Jersey, Amendment Nos. 1,2,3, etc. have been issued thereto, hereinafter called the "CONTRACT"; and

WHEREAS, United Pacific Insurance Company, as Surety for the CONTRACTOR, executed a performance bond and payment bond number NSU-2512441, copies of which are attached hereto as required by the GOVERNMENT in connection with said CONTRACT, the performance bond being in the sum of $3,152,174.00, and payment bond being in the sum of $1,576,087.00; and

WHEREAS, on July 21, 1997, the GOVERNMENT has determined that the CONTRACTOR is in default, has terminated the rights of the CONTRACTOR to proceed under the CONTRACT and has made demand upon SURETY to arrange for completion of said CONTRACT; and

WHEREAS, the GOVERNMENT desires to effect the completion of the work covered by the CONTRACT in order to expedite completion and to avoid the delay and inconvenience of reletting; and

WHEREAS, SURETY is willing and desires to complete or to procure the completion of the CONTRACT in accordance with the terms of this AGREEMENT, as a measure of cooperation with the GOVERNMENT, and to minimize excess costs, and keep such within the monetary limits of its bonds; and

WHEREAS, under its performance bond, SURETY is willing to cause the CONTRACT to be completed in accordance with the provisions of this AGREEMENT, provided that in so doing it will receive the contract balance as hereinafter set forth;

WHEREAS, the parties acknowledge that as of the date of Contractor's termination the Contractor had been paid through Payment Application No. 12 for work performed through June 15, 1997, the following:

FIXED PRICE PORTION OF CONTRACT

| | |
|---|---|
| Contract Price | $3,057,249.00 |
| Net Change Orders (P0003,4,5,6) | 394,857.96 |
| Adjusted Contract Price | $3,452,106.96 |
| Amount Paid To Contractor | 2,629,237.67* |
| Unpaid Contract Balance | $ 822,869.29 |

*The amount and quantities are subject to verification and adjustment by the parties at a future date if the amount proves to be incorrect.

ESTIMATED QUANTITY PORTION OF CONTRACT

Building No. 2401

| | |
|---|---|
| Contract Price Estimate (Item Nos. 0002 thru 0005) | ~~$878,033.00~~ 16,772.50 AW FMZ |
| Amount Paid (See Exhibit "A") | ~~6,840.00~~ 6,840.00 AW FMZ |
| Estimated Contract Balance | ~~$871,193.00~~ 10,132.50 AW FMZ |

Building No. 2403

| | | |
|---|---|---|
| Contract Price Estimate (Item Nos. 0007 thru 0010) | ~~$1,071,623.00~~ | $21,472.50 RW FMZ |
| Amount Paid (See Exhibit "B") | ~~9,610.00~~ | 9,640.00 RW FMZ |
| Estimated Contract Balance | ~~$1,061,986.00~~ | $11,832.50 RW FMZ |

Building No. 2402

| | | |
|---|---|---|
| Contract Price Estimate (Item Nos. 0012 thru 0015) | ~~$1,196,517.00~~ | $56,680.03 RW FMZ |
| Amount Paid (See Exhibit "C") | ~~26,100.00~~ | 26,100.00 RW FMZ |
| Estimated Contract Balance | ~~$1,170,417.00~~ | $30,580.00 RW FMZ |

("Contract Balance").

NOW, THEREFORE, in reliance upon the matters set forth above and in consideration of SURETY'S promise to complete through Lattimer & Associates, 228 North Route 73, Berlin, New Jersey, the work required by said CONTRACT in accordance with the terms and conditions of the CONTRACT, including all plans and specifications referred to therein, and all change orders issued pursuant thereto, and in consideration of the mutual covenant set out below, the GOVERNMENT and SURETY further agree as follows:

1. SURETY will cause the performance of all the duties and obligations of CONTRACTOR by the Completing Contractor, as contained in said CONTRACT, including all Contract documents as described therein, and all change orders issued pursuant thereto, and will have the work of CONTRACTOR completed in strict accordance with the terms and conditions of said CONTRACT, pursuant to performance bond provisions.

2. The GOVERNMENT agrees that it will pay direct to SURETY, as the same shall become progressively payable in accordance with the payment provisions of the CONTRACT,

all sums now due and payable and to become due and payable upon the CONTRACT, including all unearned Contract balances, all earned retainage percentages, all earned but unpaid estimates and any and all money contracted to be paid hereunder, as would be or would have been payable to the original contractor, if there had been no declared default, provided however, that:

a. The costs and expenses incurred in the performance of the work to be paid to SURETY shall include its accountant, attorney, consultant and engineering fees, if any, incurred by SURETY in discharging its obligations under SURETY'S performance bond given in connection with the CONTRACT; and

b. The unpaid earnings of the defaulting contractor, including retained percentages and progress estimates for work accomplished before termination, shall be subject to debts due the government by the contractor, except to the extent that such unpaid earnings may be required to permit payment to SURETY of its actual costs and expenses incurred in the completion of the work, exclusive of its payments and obligations under the payment bond given in connection with the CONTRACT; however, nothing in this AGREEMENT shall prevent payments of the claims consented to be paid in Paragraph 2c.

c. F.A.R. 49.404 (e)(3) provides that:

If the contract proceeds have been assigned to a financing institution, the surety may not be paid from unpaid earnings, unless the assignee consents to the payment in writing. For an assignment to have occurred, it must comply with the Assignment of Claims Act 1940 as amended and its implementing regulations found in F.A.R. 32.8. The GOVERNMENT is aware of SURETY'S position that the conditions set forth in F.A.R. 32.8 have not been satisfied by any alleged assignee, and that under applicable case law, no assignment could be

effectuated after knowledge by United States Air Force of the Principal's alleged default on the project without the discharge of SURETY'S obligations pro tanto and the SURETY under the present circumstances, has a priority to unpaid earnings over any alleged assignee. The GOVERNMENT is aware of SURETY'S position that the above-quoted language from F.A.R. 49.404 (e)(3) is inapplicable and contrary to law, and no consent to payments from unpaid earnings shall be required by any alleged assignee before payment to SURETY.

d. This AGREEMENT shall not waive or release the GOVERNMENT'S right to claim liquidated damages for delays in completion of the work, except to the extent that such delays, if any, may be excused under the provisions of the CONTRACT; and SURETY is likewise entitled to such extensions of contract time as are provided for under the CONTRACT and is to be relieved of any delays excused under the CONTRACT.

e. In no event shall SURETY be entitled to be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging any liabilities it may have, if any, under the payment bond of the original Contractor. Those claims under the payment bond paid to date, and claims not paid to date, are listed in Exhibit A to this AGREEMENT. SURETY is entitled to be paid for all such amounts eventually paid. Proof of actual payment will be provided to the GOVERNMENT upon its request.

3. Notwithstanding anything herein to the contrary, SURETY shall remain liable to the GOVERNMENT under the bond issued by SURETY, provided, however, nothing contained in this AGREEMENT shall be deemed to enlarge SURETY'S obligation under the bond issued by it on behalf of the original Contractor, and under no circumstances, shall SURETY be held

liable to the GOVERNMENT for any amount in excess of the Penal Sum of $3,152,174.00 as set forth in the performance bond.

4. All payments and notices to SURETY shall be delivered to SURETY at the following address: Reliance National Insurance Corporation, c/o Frederick M. Zauderer, 77 Water Street, New York, New York 10005.

5. Administration and inspection of the project will remain with the GOVERNMENT and its agents/engineers in accordance with the terms of the original CONTRACT.

6. Insofar as they comply with the provisions of the CONTRACT, the GOVERNMENT agrees that all materials, appliances and plants presently on the project site are available to SURETY and its designated independent contractors without cost for use in the completion of the remainder of the CONTRACT.

7. The GOVERNMENT acknowledges that SURETY, in entering into this AGREEMENT does not acknowledge the validity of the GOVERNMENT'S assessment of any liquidated damages by the GOVERNMENT or any other action taken by the GOVERNMENT, except as provided herein. Furthermore, in entering into this AGREEMENT, SURETY does not thereby waive prejudice, that in any way adversely affect any claim that it, as SURETY, or the Contractor might have against the GOVERNMENT.

8. The GOVERNMENT agrees that it will give SURETY notification of any problem that occurs in respect to the remaining work in the completion of the CONTRACT.

9. The GOVERNMENT agrees that SURETY'S right to proceed to complete the CONTRACT shall not be terminated nor SURETY charged additional liquidated damages if

further delay in completing the work arises from conditions or events which are excusable under the original CONTRACT and that SURETY shall be entitled to such additional compensation or equitable adjustment and time extensions as are recognizable under the original Contract Documents.

10. SURETY expressly reserves all prior rights including but not limited to the Government's overpayment to the Contractor, equitable liens and rights to subrogation that would be the United States', the laborers' or materialmen's or the contractor's under the CONTRACT or at law or equity, as well as its own rights dating back to the execution of the performance and payment bonds, including, but not limited to those rights and remedies that may accrue during the completion of the CONTRACT. No waiver of such rights is agreed to or implied or intended regardless of any provisions of this TAKEOVER AGREEMENT to the contrary. Any disagreement between the GOVERNMENT and SURETY shall be considered a dispute within the Disputes Clause contained within the CONTRACT and SURETY shall be entitled to exercise such rights as are afforded by the Disputes Clause and the Contract Disputes Act of 1978, as amended.

11. All terms and conditions of the original CONTRACT shall be and remain the same.

12. The parties hereto do not intend by any provision of this AGREEMENT to create any third-party beneficiaries nor to confer any benefit upon or enforceable rights or otherwise upon anyone other than the parties hereto.

13. It is understood and agreed that this AGREEMENT constitutes the whole of the understanding, discussions and agreements by and between the parties, and the written or oral

discussions prior to the effective date hereof shall not in any way vary or alter the terms of this AGREEMENT.

14. This AGREEMENT shall not in any way be amended or modified without the written consent of both parties.

15. This AGREEMENT shall extend to and be binding upon the parties hereto and their respective successors and assigns.

IN WITNESS HERETO, all parties to this AGREEMENT have caused to be set their hands and seals this day and year first above written.

UNITED STATES OF AMERICA
UNITED STATES AIR FORCE

Date Signed: 5 August 1997

By: [signature]

ATTEST: ____________________

Title: Contracting Officer

UNITED PACIFIC INSURANCE COMPANY
By: Reliance National

Date Signed: ____________________

By: Frederick M. Zauderer

ATTEST: 8/5/97

Title: Vice President

PH2\205545.1

August 4, 1997

# EXHIBIT "A"
# CONTRACT NO. F28609-95-C-0036
# BUILDING NO. 2401

| CLIN# | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT | ACTUAL QUANTITY PERFORMED | AMOUNT PAID |
|---|---|---|---|---|---|---|---|
| 0002 | **Termite damage and dry rot repair.** | | | | | | |
| 0002AA | All work to repair rough framing to include but not be limited to; studs, columns, joists, rafter, sill plates, window liners, door liners, double 2X headers, double 2x4 sills, shims and blocking. | 1400 | BF | 4.00 | 5600.00 | 0 | 0 |
| 0002AB | All work to repair plywood flooring. | 50 | SF | 3.25 | 162.50 | 0 | 0 |
| 0003 | **Remove asbestos.** | | | | | | |
| 0003AA | Set-up decontamination area prior to asbestos removal procedures and decontamination area clean-up including testing and dismantling of objects and systems. | 1 | EA | 1500.00 | 1500.00 | 0 | 0 |
| 0003AB | Remove, package, transport and dispose of pipe insulation including testing. No adjustment allowed for fitting. | 50 | LF | 12.00 | 600.00 | 0 | 0 |
| 0003AC | Remove, package, transport and dispose of boiler, air handler and sprayed on insulation, including testing. | 5 | SP | 15.00 | 75.00 | 0 | 0 |
| 0003AD | Tear down decontamination including testing, and re-establishment of objects and systems. | 1 | EA | 500.00 | 500.00 | 0 | 0 |
| AE | Glove bag removals: Remove, package, transport and dispose of asbestos insulation. | 4 | LF | 25.00 | 100.00 | 0 | 0 |
| 0003AF | Transite removals: Remove, package, transport and dispose of transite asbestos piping. | 4 | LF | 10.00 | 40.00 | 4 | 40.00 |
| 0003AG | Transite removal: Remove, package, transport and dispose of transite asbestos wallboard, shingles and siding. | 4 | SF | 10.00 | 40.00 | 0 | 0 |
| 0003AH | Repackage, transport and dispose of improperly packaged material. | 1 | CY | 120.00 | 120.00 | 0 | 0 |
| 0003AJ | Transport and dispose of already packaged material. | 1 | CY | 110.00 | 110.00 | 0 | 0 |
| 0003AK | Vinyl asbestos tile removals: Remove, package, transport of vinyl asbestos floor tile. | 1700 | SF | 4.00 | 6800.00 | 1700 | 6800.00 |
| 0003AL | Repair damaged insulation/exterior jacketing of piping. | 10 | SF | 15.00 | 150.00 | 0 | 0 |
| 0004 | **Insulate pipes (for existing pipes from which asbestos is removed. Insulation of new piping is part of CLIN 0001AA).** | | | | | | |
| 0004AA | Insulate 1 1/4" - 1 1/2" pipes | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0004AB | Insulate 2" pipes | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0004AC | Insulate 2 1/2" pipe | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| ˀ004AD | Insulate 3" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |
| ·AE | Insulate 3 1/2" pipe | 10 | SF | 4.50 | 45.00 | ·0 | 0 |

| CLIN# | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT | ACTUAL QUANTITY PERFORMED | AMOUNT PAID |
|---|---|---|---|---|---|---|---|
| .F | Insulate 4" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |
| ...4AG | Insulate secondary heating piping (1/2" thru 1") | 80 | SF | 5.00 | 400.00 | 0 | 0 |
| **0005** | **Insulate fittings, flanges, elbows & tees (1/2" thru 12")** | | | | | | |
| 0005AA | 1/2" thru 1" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0005AB | 1 1/4" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0005AC | 1 1/2" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0005AD | 2" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0005AE | 2 1/2" fittings | 2 | EA | 20.00 | 40.00 | 0 | 0 |
| 0005AF | 3" fittings | 2 | EA | 25.00 | 50.00 | 0 | 0 |
| 0005AG | 3 1/2" fittings | 2 | EA | 25.00 | 50.00 | 0 | 0 |
| 0005AH | 4" fittings | 2 | EA | 30.00 | 60.00 | 0 | 0 |
| | **NOT-TO-EXCEED TOTAL FOR BASIC REQUIREMENT (CLIN 0001-0005AH)** | | | | ~~$873,033.50~~ 16,772.50 | | $6,840.00 |

August 4, 1997

EXHIBIT "B"
CONTRACT NO. F28609-95-C-0036
BUILDING NO. 2403

| CLIN# | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT | ACTUAL QUANTITY PERFORMED | AMOUNT PAID |
|---|---|---|---|---|---|---|---|
| 0007 | **Termite damage and dry rot repair.** | | | | | | |
| 0007AA | All work to repair rough framing to include but not be limited to; studs, columns, joists, rafter, sill plates, window liners, door liners, double 2X headers, double 2x4 sills, shims and blocking. | 1800 | BF | 4.00 | 7200.00 | 0 | 0 |
| 0007AB | All work to repair plywood flooring. | 50 | SF | 3.25 | 162.50 | 0 | 0 |
| 0008 | **Remove asbestos.** | | | | | | |
| 0008AA | Set-up decontamination area prior to asbestos removal procedures and decontamination area clean-up including testing and dismantling of objects and systems. | 1 | EA | 1500.00 | 1500.00 | 0 | 0 |
| 0008AB | Remove, package, transport and dispose of pipe insulation including testing. No adjustment allowed for fitting. | 75 | LF | 12.00 | 900.00 | 0 | 0 |
| 0008AC | Remove, package, transport and dispose of boiler, air handler and sprayed on insulation, including testing. | 5 | SP | 15.00 | 75.00 | 0 | 0 |
| 0008AD | Tear down decontamination including testing, and re-establishment of objects and systems. | 1 | EA | 500.00 | 500.00 | 0 | 0 |
| AE | Glove bag removals: Remove, package, transport and dispose of asbestos insulation. | 4 | LF | 25.00 | 100.00 | 0 | 0 |
| 0008AF | Transite removals: Remove, package, transport and dispose of transite asbestos piping. | 4 | LF | 10.00 | 40.00 | 4 | 40.00 |
| 0008AG | Transite removal: Remove, package, transport and dispose of transite asbestos wallboard, shingles and siding. | 4 | SF | 10.00 | 40.00 | 0 | 0 |
| 0008AH | Repackage, transport and dispose of improperly packaged material. | 1 | CY | 120.00 | 120.00 | 0 | 0 |
| 0008AJ | Transport and dispose of already packaged material. | 1 | CY | 110.00 | 110.00 | 0 | 0 |
| 0008AK | Vinyl asbestos tile removals: Remove, package, transport of vinyl asbestos floor tile. | 2400 | SF | 4.00 | 9600.00 | 2400 | 9,600.00 |
| 0008AL | Repair damaged insulation/exterior jacketing of piping. | 10 | SF | 15.00 | 150.00 | 0 | 0 |
| 0009 | **Insulate pipes (for existing pipes from which asbestos is removed. Insulation of new piping is part of CLIN 0001AA).** | | | | | | |
| 0009AA | Insulate 1 1/4" - 1 1/2" pipes | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0009AB | Insulate 2" pipes | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0009AC | Insulate 2 1/2" pipe | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0009AD | Insulate 3" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |
| AE | Insulate 3 1/2" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |

| CLIN# | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT | ACTUAL QUANTITY PERFORMED | AMOUNT PAID |
|---|---|---|---|---|---|---|---|
| [illegible] | Insulate 4" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |
| [illegible]AG | Insulate secondary heating piping (1/2" thru 1") | 80 | SF | 5.00 | 400.00 | 0 | 0 |
| 0010 | **Insulate fittings, flanges, elbows & tees (1/2" thru 12")** | | | | | | |
| 0010AA | 1/2" thru 1" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0010AB | 1 1/4" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0010AC | 1 1/2" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0010AD | 2" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0010AE | 2 1/2" fittings | 2 | EA | 20.00 | 40.00 | 0 | 0 |
| 0010AF | 3" fittings | 2 | EA | 25.00 | 50.00 | 0 | 0 |
| 0010AG | 3 1/2" fittings | 2 | EA | 25.00 | 50.00 | 0 | 0 |
| 0010AH | 4" fittings | 2 | EA | 30.00 | 60.00 | 0 | 0 |
| | | | | | ~~$1,074,623.50~~ | | $9,640.00 |

21,472.50 [illegible]

August 4, 1997

EXHIBIT "C"
CONTRACT NO. F28609-95-C-0036
BUILDING NO. 2402

| CLIN# | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT | ACTUAL QUANTITY PERFORMED | AMOUNT PAID |
|---|---|---|---|---|---|---|---|
| 0012 | **Termite damage and dry rot repair.** | | | | | | |
| 0012AA | All work to repair rough framing to include but not be limited to; studs, columns, joists, rafter, sill plates, window liners, door liners, double 2X headers, double 2x4 sills, shims and blocking. | 5000 | BF | 4.00 | 20,000.00 | 0 | 0 |
| 0012AB | All work to repair plywood flooring. | 100 | SF | 3.25 | 325.00 | 0 | 0 |
| 0013 | **Remove asbestos.** | | | | | | |
| 0013AA | Set-up decontamination area prior to asbestos removal procedures and decontamination area clean-up including testing and dismantling of objects and systems. | 3 | EA | 1500.00 | 4500.00 | 0 | 0 |
| 0013AB | Remove, package, transport and dispose of pipe insulation including testing. No adjustment allowed for fitting. | 200 | LF | 12.00 | 2400.00 | 0 | 0 |
| 0013AC | Remove, package, transport and dispose of boiler, air handler and sprayed on insulation, including testing. | 10 | SP | 15.00 | 150.00 | 0 | 0 |
| 0013AD | Tear down decontamination including testing, and re-establishment of objects and systems. | 3 | EA | 500.00 | 1500.00 | 0 | 0 |
| AE | Glove bag removals: Remove, package, transport and dispose of asbestos insulation. | 10 | LF | 25.00 | 250.00 | 0 | 0 |
| 0013AF | Transite removals: Remove, package, transport and dispose of transite asbestos piping. | 10 | LF | 10.00 | 100.00 | 10 | 100.00 |
| 0013AG | Transite removal: Remove, package, transport and dispose of transite asbestos wallboard, shingles and siding. | 10 | SF | 10.00 | 100.00 | 0 | 0 |
| 0013AH | Repackage, transport and dispose of improperly packaged material. | 1 | CY | 120.00 | 120.00 | 0 | 0 |
| 0013AJ | Transport and dispose of already packaged material. | 1 | CY | 110.00 | 110.00 | 0 | 0 |
| 0013AK | Vinyl asbestos tile removals: Remove, package, transport of vinyl asbestos floor tile. | 6500 | SF | 4.00 | 26,000.00 | 6500 | 26,000.0C |
| 0013AL | Repair damaged insulation/exterior jacketing of piping. | 10 | SF | 15.00 | 150.00 | 0 | 0 |
| 0014 | **Insulate pipes (for existing pipes from which asbestos is removed. Insulation of new piping is part of CLIN 0001AA).** | | | | | | |
| 0014AA | Insulate 1 1/4" - 1 1/2" pipes | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0014AB | Insulate 2" pipes | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0014AC | Insulate 2 1/2" pipe | 10 | SF | 4.00 | 40.00 | 0 | 0 |
| 0014AD | Insulate 3" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |
| ˜014AE | Insulate 3 1/2" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |
| 4AF | Insulate 4" pipe | 10 | SF | 4.50 | 45.00 | 0 | 0 |

| CLIN# | DESCRIPTION | EST QTY | UNIT | UNIT PRICE | EST AMT | ACTUAL QUANTITY PERFORMED | AMOUNT PAID |
|---|---|---|---|---|---|---|---|
| G | Insulate secondary heating piping (1/2" thru 1") | 80 | SF | 5.00 | 400.00 | 0 | 0 |
| | **Insulate fittings, flanges, elbows & tees (1/2" thru 12")** | | | | | | |
| 0015AA | 1/2" thru 1" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0015AB | 1 1/4" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0015AC | 1 1/2" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0015AD | 2" fittings | 2 | EA | 15.00 | 30.00 | 0 | 0 |
| 0015AE | 2 1/2" fittings | 2 | EA | 20.00 | 40.00 | 0 | 0 |
| 0015AF | 3" fittings | 2 | EA | 25.00 | 50.00 | 0 | 0 |
| 0015AG | 3 1/2" fittings | 2 | EA | 25.00 | 50.00 | 0 | 0 |
| 0015AH | 4" fittings | 2 | EA | 30.00 | 60.00 | 0 | 0 |
| | | | | | ~~$1,196,517.00~~ 56,680.00 | | $26,100.00 |

PH2\209695.1

# AFFIDAVIT OF FREDERICK M. ZAUDERER

I, Frederick M. Zauderer, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I was the Vice President of Reliance National at the time of the negotiation of a Takeover Agreement dated August 5, 1997, between United Pacific Insurance Company ("United Pacific") and the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. United Pacific issued the surety bonds for the Contract, and the Reliance organization owned United Pacific.

3. Reliance National was the underwriting operation of the Reliance organization, and I was United Pacific's authorized representative at all relevant times for the Contract.

4. I negotiated the Takeover Agreement of August 5, 1997, on behalf of United Pacific.

5. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

6. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

7. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

8. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

9. Had I known that the Contract was illegal at the time of the Takeover Agreement, I would have never entered into the Takeover Agreement on behalf of United Pacific.

Frederick M. Zauderer

January 10, 2005
Date

Signed and sworn before me on this 10th day of January, 2005.

Notary Public

KATHLEEN WHITFORD
Notary Public, State of New Yoork
No. 01WH5013131
Qualified in New York County
Commission Expires 7-15-07

# AFFIDAVIT OF FREDERICK M. ZAUDERER

I, Frederick M. Zauderer, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I was the Vice President of Reliance National at the time of the negotiation of a Takeover Agreement dated August 5, 1997, between United Pacific Insurance Company ("United Pacific") and the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. United Pacific issued the surety bonds for the Contract, and the Reliance organization owned United Pacific.

3. Reliance National was the underwriting operation of the Reliance organization, and I was United Pacific's authorized representative at all relevant times for the Contract.

4. I negotiated the Takeover Agreement of August 5, 1997, on behalf of United Pacific.

5. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

6. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

7. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

8. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

9. Had I known that the Contract was illegal at the time of the Takeover Agreement, I would have never entered into the Takeover Agreement on behalf of United Pacific.

Frederick M. Zauderer

January 10, 2005
Date

Signed and sworn before me on this 10th day of January, 2005.

Notary Public

KATHLEEN WHITFORD
Notary Public, State of New Yoork
No. 01WH5013131
Qualified in New York County
Commission Expires 7-15-07

PH2\833934.1

# AFFIDAVIT OF FREDERICK M. ZAUDERER

I, Frederick M. Zauderer, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I was the Vice President of Reliance National at the time of the negotiation of a Takeover Agreement dated August 5, 1997, between United Pacific Insurance Company ("United Pacific") and the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. United Pacific issued the surety bonds for the Contract, and the Reliance organization owned United Pacific.

3. Reliance National was the underwriting operation of the Reliance organization, and I was United Pacific's authorized representative at all relevant times for the Contract.

4. I negotiated the Takeover Agreement of August 5, 1997, on behalf of United Pacific.

5. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

6. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

7. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

8. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

9. Had I known that the Contract was illegal at the time of the Takeover Agreement, I would have never entered into the Takeover Agreement on behalf of United Pacific.

Frederick M. Zauderer

January 10, 2005
Date

Signed and sworn before me on this 10th day of January, 2005.

Notary Public

KATHLEEN WHITFORD
Notary Public, State of New Yoork
No. 01WH5013131
Qualified in New York County
Commission Expires 7-6-08

# AFFIDAVIT OF SCOTT LATTIMER

I, Scott Lattimer, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I am President of Clyde Lattimer & Son Construction and Lattimer & Associates and held these positions at the time of the negotiation of a Takeover Agreement dated August 5, 1997, between United Pacific Insurance Company ("United Pacific") and the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. United Pacific entered into a completion contract with Lattimer & Associates on August 6, 1997, pursuant to which Lattimer & Associates completed the Contract work; I was involved in the negotiation of the completion contract.

3. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

4. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

5. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

6. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

7. Had I known that the Contract was illegal at the time of the Takeover Agreement, I would have never entered into the completion contract with United Pacific.

[signature]
Scott Lattimer

1-5-05
Date

Signed and sworn before me on this 5 day of January, 2005.

[signature]
Notary Public

VICTORIA M. STAHL
PH2\83 NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/30/2007

# AFFIDAVIT OF IRVING A. CORNINE

I, Irving A. Cornine, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I was retained by United Pacific Insurance Company ("United Pacific") in the fall of 1997 to provide consulting services in order to help United Pacific ascertain whether they had valid claims against the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. Prior to my retention by United Pacific, I had significant experience in the area of government contracts.

3. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

4. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

5. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

6. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

Irving A. Cornine [signature]

Date 7 Jan 05

Signed and sworn before me on this 7 day of January, 2005.

Lori J Preston [signature]
Notary Public

LORI J. PRESTON
Notary Public, State of New York
Cortland County, #4967480
My Commission expires June 4, 06

PH2\833934.1

**AFFIDAVIT OF IRVING A. CORNINE**

I, Irving A. Cornine, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I was retained by United Pacific Insurance Company ("United Pacific") in the fall of 1997 to provide consulting services in order to help United Pacific ascertain whether they had valid claims against the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. Prior to my retention by United Pacific, I had significant experience in the area of government contracts.

3. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

4. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

5. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

6. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

Irving A. Cornine [signature]
Irving A. Cornine

07 Jan 05
Date

Signed and sworn before me on this 7 day of January, 2005.

Lori J Preston [signature]
Notary Public

LORI J. PRESTON
Notary Public, State of New York
Cortland County, #4967480
My Commission expires June 4, 06

PH2\833934.1

**AFFIDAVIT OF IRVING A. CORNINE**

I, Irving A. Cornine, having first been sworn, state that the following is true and correct to the best of my knowledge and belief:

1. I was retained by United Pacific Insurance Company ("United Pacific") in the fall of 1997 to provide consulting services in order to help United Pacific ascertain whether they had valid claims against the United States of America, United States Air Force ("Government"), regarding Contract No. F28609-95-C-0036.

2. Prior to my retention by United Pacific, I had significant experience in the area of government contracts.

3. I was involved in the preparation of the Request for Equitable Adjustment ('REA") dated April 11, 2000, which was submitted to the contracting officer for the Contract.

4. I was involved in the preparation of the illegal contract claim which was submitted as part of the REA.

5. Initial drafts of the REA did not include any claim regarding the illegality of the contract until approximately October 1999 following an investigation and review of documents which supported the claim that the Contract was illegally funded as repair and maintenance subject to a $300,000 Congressional limitation. After repeated requests, funding documents were produced by the Government in January 2000 through the Freedom of Information Act ("FOIA"), verifying and supporting United Pacific's claim that the Contract was illegal. Therefore, United Pacific added the illegal contract claim to the filed REA in April 2000 after determining that the total conversion of dilapidated barracks into a modern office complex did not constitute repair and maintenance. It clearly constituted construction requiring Congressional approval for funding in excess of $300,000.

6. At no time was I able to definitively determine that the Contract was illegal until approximately January 2000.

Irving A. Cornine
Irving A. Cornine

07 Jan 05
Date

Signed and sworn before me on this 7 day of January, 2005.

Lori J Preston
Notary Public

LORI J. PRESTON
Notary Public, State of New York
Cortland County, # 4967480
My Commission Expires June 4, 06

PH2\833934.1