**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| UNITED PACIFIC INSURANCE COMPANY, | : | |
| RELIANCE INSURANCE COMPANY, and | : | |
| RELIANCE NATIONAL, | : | No. 1:05–CV-00107 |
| Plaintiffs | : | |
| | : | Judge Firestone |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| Defendant | : | |

**PLAINTIFFS' *SUR* BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Respectfully Submitted,

**POST & SCHELL, P.C.**

Dated: June 1, 2005

/s/ Gary A. Wilson
Gary A. Wilson
PA Attorney I.D. #39995
John W. Dornberger
PA Attorney I.D. #69293
Steven K. Bainbridge, Esquire
PA Attorney I.D. # 91018
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103-2808
(215) 587-1000
(215) 587-1444 (fax)
gwilson@postschell.com
jdornberger@postschell.com
sbainbridge@postschell.com

Attorneys for
United Pacific Insurance Company,
Reliance Insurance Company, and
Reliance National

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. ARGUMENT ........ 1

A. United Stands in the Shoes of the Original Contractor ........ 1

B. United Asserts a Contractual Claim, Not a Statutory Violation Claim ........ 2

C. Accrual Suspension is Applicable ........ 3

D. Tesora II Moots Both the Hermes and Tesoro I Cases for Waiver Analysis ........ 4

E. Sureties Can Rely Upon the Doctrine of Equitable Subrogation ........ 6

II. REQUEST FOR ORAL ARGUMENT ........ 7

III. CONCLUSION ........ 7

# TABLE OF AUTHORITIES

**Page**

**Cases:**

Godley v. United States, 5 F.3d 1473 (Fed. Cir. 1993) ....................2, 3, 7

Insurance Company of West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ....................1, 5, 6, 7

Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003)....................3

National Surety Corporation v. United States, 118 F.3d 1542 (Fed. Cir. 1997)....................1, 2

Tesoro Hawaii Corporation v. United States, ___ F.3d ___, 2005 U.S. App. LEXIS 7092, 2005 WL 949074 (Fed. Cir. 2005)....................4, 5

United States v. Amdahl, 786 F.2d 387 (Fed. Cir. 1986)....................2, 3, 7

Whittaker Electronic Systems v. Dalton, 124 F.3d 1443 (Fed. Cir. 1997)....................5

**Statutes:**

10 U.S.C. §2805....................2

# I. ARGUMENT

## A. United Stands in the Shoes of the Original Contractor.

Although the Government continues to insist otherwise, United stands in the shoes of the original Contractor, under principles of equitable subrogation. Standing in the shoes of the original Contractor (hereafter also referred to as "Castle"), United is asserting a Contractual claim based upon the illegality of the Contract, which resulted in an implied-in-fact Contract between the Government and the original Contractor, Castle. United is not asserting that a direct implied-in-fact Contract was formed between the Government and United.

After Castle defaulted, United, as the surety who issued the performance bond for the Contract, took over Contract performance and in good faith completed work on the Project. Completion of the Project provides the basis for United to assert Castle's Contractual claims, under the doctrine of equitable subrogation. *See* Insurance Company of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001) (Surety may succeed to the Contractual rights of a Contractor against the Government when the surety takes over Contract performance or when it finances completion of the defaulted Contract). United's claims must be understood within the context of the surety relationship. A surety bond embodies the principle that any material change in the bonded Contract that increases the surety's obligation without the surety's consent, affects the surety relationship. National Surety Corporation v. United States, 118 F.3d 1542, 1544 (Fed. Cir. 1997). Where, without the surety's consent, the parties modify their Contract and materially increase the risk to the surety, the surety's obligation is reduced due to the modification. Id., at 1544. "During the performance of the Contract, the Government has a duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the Contract." Id., at1546. "It is of course almost axiomatic

that any change or modification of the construction Contract which materially increases a compensated surety's risk discharges the obligation." Id., at 1547.

United asserts in its Complaint that the requirement for the Air Force to obtain congressional approval for the Contract (pursuant to 10 U.S.C. §§2805 and 2811) would have delayed the Contract award and, in that event, United would not have written the bond. The remedy for performance pursuant to an illegal Contract is the establishment of an implied-in-fact Contract, and a *quantum meruit* award for expended monies. United is merely asserting the Contractual rights of Castle, which United succeeded to when it took over performance of the Contract. *See* Godley v. United States, 5 F.3d 1473, 1474 (Fed. Cir. 1993); United States v. Amdahl, 786 F.2d 387, 392 (Fed. Cir. 1986).

**B. United Asserts a Contractual Claim, Not a Statutory Violation Claim.**

The Government mischaracterizes United's cause of action as a claim for a direct violation of 10 U.S.C. §2805. United, standing in the shoes of the original Contractor, is asserting Castle's Contractual claim based on the Contract's illegality. An illegal Contract is void *ab initio,* causing the formation of an implied-in-fact Contract between the Contractor and the Government, for which *quantum meruit* recovery is the proper remedy. Godley, 5 F.3d at 1474; Amdahl, 786 F.2d at 392. United, standing in the shoes of the original Contractor, has a cause of action pursuant to the Tucker Act for the illegality of an express Contract, and for the implied-in-fact Contract that arises therefrom. United is not seeking redress under the Tucker Act for a direct violation of 10 U.S.C. §§ 2805 or 2811.

The Godley court provides safeguards to the Government against inappropriate assertions of Contractual illegality. The taint of the illegality must reach the Contract itself and cause an unfavorable Contractual term. Godley, 5 F.3d at 1476. In addition, the illegality must be "plain" or "palpable" to the party who is resisting the assertion of the illegality (i.e., the illegality

must be plain to the party that is asserting that the Contract is legal). Amdahl, 786 F.2d 394-395. (As in Amdahl and Godley, in the usual situation it is the Government who is asserting Contractual illegality, and in those situations the illegality must be plain to the Contractor to justify voiding the Contract). Both of these protections are inapplicable in the present case. To avoid Congressional oversight, the Government intentionally crafted the Contract in such a manner as to fall under the monetary limits for Congressional approval of new construction, as well as to mischaracterize over $2 million of the Project as O & M (Operations and Maintenance) work.

**C. Accrual Suspension is Applicable.**

Ironically, the Government has always argued that the subject Contract was legal and yet, now, argues that United and Castle should have known that the Contract was illegal since 1995. United will prove that the Government's position is fallacious. It is absurd for the Government to argue that a good faith completing surety should have determined the illegality of the Contract in 1995, when the Government to this day contends that the Contract is legal. Accrual suspension occurs when the "claimant knew or should have known that the claim existed," and the "defendant concealed its acts with the result that plaintiff was unaware of their existence …" Martinez v . United States, 333 F.3d 1295, 1319 (Fed. Cir. 2003). When the original Contractor failed, United immediately took on its obligations to perform under the bond. Under the Government's view, Castle and United should have challenged the Contract's legality, presumably even if doing so would have delayed performance. Neither Castle nor United had sufficient knowledge to be aware of the illegality when the Contract was made. They did not acquire such knowledge until 2000, when United received information from the Government pursuant to its Freedom of Information Act requests, as asserted in United's Complaint.

The Government argues at length in its Reply Brief that the Contract was so illegal that it should have been obvious to anyone with intimate knowledge of the Contract and familiarity with the regulations that the actions of the Government were illegal. Understanding of the illegality of the Government's actions required discernment and analysis of multiple elements of a complex Contract, as well as an intimate comprehension of complex statutory provisions and funding terminology unique to the Government and the interrelationship between them. United had to acquire and understand this knowledge to become aware of the claim. As United asserted in its Complaint, it did not become cognizant of the claim until it received documentation in response to its Freedom of Information Act. Although these issues may be developed during discovery, the Court at this juncture is only reviewing the sufficiency of the United's Complaint pursuant to a motion to dismiss. As such, the Court must presume as true United's well-pleaded averments. Accordingly, United is entitled to accrual suspension at this juncture.

**D. Tesoro II moots both the Hermes and Tesoro I cases for Waiver analysis.**

The decision in Tesoro Hawaii Corporation v. United States, ___ F.3d ___, 2005 U.S. App. LEXIS 7092, 2005 WL 949074, (Fed. Cir. 2005) (hereafter "Tesoro II") was handed down on April 26, 2005, the same day that United filed its brief in opposition. Tesoro II moots the waiver analysis in Tesoro I and Hermes. In Tesoro II, the underlying statute in that case was found to be legal, as compared to Tesoro I and Hermes, where the underlying statute was determined to be illegal (and thus requiring a waiver analysis). The Tesoro II court stated, in analyzing the waiver issue:

> Likewise, the government's argument that Appellants waived their breach of Contract claims was based on the presumption that Appellants acquiesced in the incorporation of the illegal EPA clauses and then fully performed the Contract before bringing suit. Hermes, 58 Fed. Cl. at 12; Tesoro, 58 Fed. Cl. at 73. Our holding that the use of the PMM-based EPA clause was authorized under

> the statute moots the issue as to whether Appellants had waived their right to challenge the legality of that clause.

Tesoro II, 2005 U.S. App. LEXIS 7092, *26-27 (Found just before the conclusion section).

In its Reply Brief, the Government informs this Court that Tesoro I and Hermes were "reversed on other grounds" in Tesoro II. This is a specious statement of the decision of the Court in Tesoro II, wholly ignoring its significance to the application of waiver in the instant matter. Tesoro II expressly moots the holdings of Hermes and Tesoro I as they relate to waiver. 2005 WL 949074 at *26-27. As a result, the Whittaker case controls the waiver analysis in the instant matter. Since Whittaker is plainly distinguishable from the facts before this Court, the Government in its Reply Brief wishes to dismiss Tesoro II as "reversed on other grounds." The Contracting party in Whittaker was aware during the procurement process of the illegality, actually documenting its awareness in a report created at the time the Contract was formed. Whittaker Electronic Systems v. Dalton, 124 F.3d 1443, 1444 (Fed. Cir. 1997). Thus, with an undisputed record before it establishing knowledge of the illegality by the Contracting party, the Whittaker Court held that an *intentional* waiver of rights occurred. Id. United did not possess documentation from which to determine that the subject Contract was illegal until early 2000 when the Government produced funding, Contract and other records. *See* United Compl., ¶17; Affidavits, Exhibit "D." United, as a surety, was required to (and did) perform when Castle defaulted. United in good faith completed work without sufficient information to determine if the Contract was illegal.

**E. Sureties can Rely Upon the Doctrine of Equitable Subrogation.**

As discussed in United's Brief in Opposition, United, as surety, stands in the shoes of the original Contractor under principles of equitable subrogation, and can assert a *quantum meruit* claim for monies due because of Contractual illegality. The Government asserts on page 16 of

its Reply Brief that "the types of equitable subrogation claims a performance bond surety may assert in the Court of Federal Claims are limited to two kinds," relying on Insurance Company of the West, 243 F.3d at 1370. Thereafter the Government argues that United has cited no case law in which a surety has been allowed to bring suit pursuant to the Tucker Act alleging that the Contract it bonded was illegal when awarded. The Government's implication that United's claim is not one of the two kinds allowed is incorrect.

The Insurance Company of the West Court affirmed that sureties have traditionally asserted claims against the government under the doctrine of equitable subrogation:

> We have specified two circumstances in which a surety may succeed to the Contractual rights of a Contractor against the government: when the surety takes over Contract performance or when it finances completion of the defaulted Contract.

Insurance Company of the West, 243 F.3d at 1370.

Clearly, United was in compliance with Insurance Company of the West when it took over Contract performance upon the termination of Castle by the Government and proceeded in good faith to complete the Project. United had no reason to suspect nor did it possess documentation from which to determine that the subject Contract was illegal until early 2000 when the Government produced funding, Contract and other records. *See* United Compl., ¶17; Affidavits, Exhibit "D." Having performed, Insurance Company of the West clearly provides that United may bring Castle's claim as to Contract illegality under the doctrine of equitable subrogation. United has the right to assert Castle's claim that the illegal Contract is void *ab initio,* which caused the formation of an implied-in-fact Contract between the Contractor and the Government, for which *quantum meruit* is the proper remedy. Godley, 5 F.3d at 1474; Amdahl, 786 F.2d at 392.

## II. REQUEST FOR ORAL ARGUMENT

Pursuant to U.S.C.S. Claim Ct. Appendix §20, United requests oral argument be scheduled on the Motion to Dismiss.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Respectfully Submitted,

**POST & SCHELL, P.C.**

Dated: June 1, 2005

/s/ Gary A. Wilson

Gary A. Wilson
PA Attorney I.D. #39995
John W. Dornberger
PA Attorney I.D. #69293
Steven K. Bainbridge, Esquire
PA Attorney I.D. # 91018
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103-2808
(215) 587-1000
(215) 587-1444 (fax)
gwilson@postschell.com
jdornberger@postschell.com
sbainbridge@postschell.com

Attorneys for
United Pacific Insurance Company,
Reliance Insurance Company, and
Reliance National

**CERTIFICATE OF SERVICE**

I, Gary A. Wilson, Esquire, of Post & Schell, P.C., hereby certify that on this 1st day of June 2005, a copy of the foregoing **PLAINTIFF'S *SUR* BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Michael N. O'Connell, Esquire
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
ATTN: Classification Unit
1100 L Street, N.W.
Washington, DC 20530

/s/ Gary A. Wilson
Gary A. Wilson